### CITY OF PORT LAVACA et al.
### v. BAUER et al.

#### No. 4811.

Court of Civil Appeals of Texas.
El Paso.

July 18, 1951.

Rehearing Denied Aug. 8, 1951.

Vinson, Elkins & Weems, Victor W. Bouldin and R. Richard Roberts, all of Houston, Charles Whitener, Jr., City Atty., Port Lavaca, for appellants.

Leon C. Levy, Port Lavaca, John G. Stofer, Scarborough & Crain and Jack Scarborough, all of Victoria, Miles L. Moss, La Grange, for appellees.

PRICE, Chief Justice.

This is an appeal by the City of Port Lavaca, her Mayor, George W. Craigen, and her three commissioners, from an adverse judgment in a suit by W. H. Bauer in his capacity as a tax-paying citizen of the City of Port Lavaca, Texas, in which was sought and awarded an injunction against said above named defendants, enjoining them from expending a fund arising

from the sale of certain bonds, said fund being known as the City of Port Lavaca Sea Wall and Breakwater Construction fund, in the construction of storm sewers. The trial was to the court.without a jury. On motion of appellants the court made up and filed Findings of Fact and Conclusions of Law.

Section 8 of Article 11 of the State Constitution, Vernon's Ann.St., is as follows: "The counties and cities on the Gulf Coast being subject to calamitous overflows, and a very large proportion of the general revenue being derived from those otherwise prosperous localities. The Legislature is especially authorized to aid by donation of such portion of the public domain as may· be deemed proper, and in such mode as may be provided by law, the construction of sea walls, or breakwaters, such aid to be proportioned to the extent and .value of the works constructed, or to be constructed, in any locality."

In pursuance of the authority conferred by the said Section 8, at the regular session of the Legislature of 1941 there was passed a special Act as to the City of Port Lavaca, Acts of 1941, c. 485, page 780 et seq. In substance this Act donated to the City of Port Lavaca for a period of twenty years the net amount of all State ad valorem taxes levied and collected for the state for state general purposes, on all property, real and personal, including the rolling stock of any railroad in Calhoun County. Said money when received by the City of Port Lavaca shall be used by such city as the agency· of the State of Texas in the manner provided in this ·Act for the construction, repair and improvement of sea walls, breakwaters and harbors. The city is authorized ·to issue negotiable bonds secured by a pledge of tax money donated. The governing body of the city is authorized to secure such bonds additionally ·by a pledge of its own taxing power. It is further provided as follows: "The proceeds of the sale of such ·bonds may be used for the purpose of constructing, repairing, and improving sea walls, breakwaters, and harbors to protect said locality from such calamitous overflows".

In pursuance of this Act of the Legislature, several years ago the City of Port Lavaca voted bonds in the sum of $300,000 and sold same, and has on hand over $200,-000 of the proceeds, held in a fund called the "City of Port Lavaca Sea Wall and Breakwater· Construction Fund". On the 28th day of July, 1950, the City Commission passed and adopted an ordinance entitled "An Ordinance Approving Plan for Construction of 'Sea Wall and Breakwater Improvements" and authorizing the preparation of detailed plans and specifications therefor. The ordinance recites that the city had theretofore employed the engineering ·firm of Freese, Nichols & Turner of Houston to prepare a preliminary study and report as to feasible plans for the further construction, repair and improvements of the sea walls and breakwaters to protect the City of Port Lavaca from calamitous overflows; that the firm had prepared the report and same had been accepted by the city; further that it was found that alternate Plan No. 1 as contained in the report of the said engineers, dated the 29th day of October, 1949, would best provide the desired protection from overflows, and the improvements provided for therein will constitute an integral part of the city sea wall and breakwater protection. It was ordained that alternate Plan No. 1 as contained in the report of said engineering firm be authorized and the firm directed to proceed immediately with preparations of detailed plans and specifications for the construction and improvements indicated in said plan, such engineering services to be performed pursuant to and in accordance with the terms of that certain engineering contract between the City of Port Lavaca and said engineering firm, dated the 16th day of June, 1949.

The Findings of Fact of the Court were in part as follows:

"2. Following the passage by the 47th Legislature of Texas of what is sometimes known as the 'Port Lavaca Tax Remission Act of 1941', being Chapter 485, Acts 47th Legislature, Regular Session, 1941, Seawall and Breakwater Bonds in the amount

of $300,000.00 were authorized by the citizens of Port Lavaca in a bond election duly held, were issued, and sold. Of the proceeds of the sale of these bonds, there is now on deposit in defendant First State Bank, Port Lavaca, Texas, city depository, approximately $279,000 in cash and negotiable government bonds. The validity of the bond election, or the sale of the bonds, is not in question, and all parties concede the entire legality of the issuance and sale of the bonds, and that the bank is properly in custody of the funds.

"3. The said Tax Remission Act of 1941 was passed under the authority of Section 8, Article 11, of the Texas State Constitution and provides that the proceeds of the sale of such bonds may be used for the purpose of constructing, repairing and improving seawalls, breakwaters and harbors to protect said locality from such calamitous overflows.

"4. * * * believing that the drainage condition of the city required improving, (which it did need) employed the engineering firm of Freese, Nichols and Turner, Consulting Engineers, Houston, Texas, to make an investigation into the matter, and report to the city as to whether, and if so, how the City could adopt a drainage plan and pay therefor out of said Seawall and Breakwater Fund and to recommend other needed improvements which could be financed from such fund. Said firm of engineers, in pursuance of said employment, made said study, and thereafter, on October 29, 1949, furnished to the City of Port Lavaca a written 'Study and report' on 'Seawall, Breakwater and related improvements for the City of Port Lavaca, Texas' (preface page) a copy of which was introduced with limitations in evidence by the plaintiffs, and without limitations by the defendants, being Plaintiff's Exhibit No. 3."

The court sets forth in its Findings of Fact the ordinance of the City. Substantially same has been heretofore set forth. The court further found:

"6. Said 'Alternate Plan No. 1' approved in said city ordinance provides for the construction of a system of storm drains for a portion of the city of Port Lavaca, to cost approximately $184,000.00 (as estimated by Messrs. Freese, Nichols & Turner in 1949), which would discharge into the bay over the top of the existing seawall, described in the latter part of the written report and study of said engineers, the arrangement of said system of storm drains being shown on the map being Exhibit I of plaintiff's Exhibit No. 3, being Exhibit I of said written Study and Report. Defendants City of Port Lavaca and its officials admitted in their pleadings and in open court, and the court so finds, that they, and the said City of Port Lavaca, intend to construct the improvements provided for in said 'Alternate Plan No. 1', as shown on said map being Exhibit I of said Study and Report of Freese, Nichols & Turner, and pay therefor out of the Seawall and Breakwater Fund of said city, unless restrained and enjoined from so doing in this lawsuit.

"7. The City of Port Lavaca is situated on a bluff at an elevation of from 18 to 20 feet above mean sea level. The bluff is protected by a six foot seawall extending about five thousand feet along the bay front within the city limits, built with funds made available through a state tax remission bill passed by the Legislature in 1919, at a cost of $109,000. It was constructed in 1922 as a means of arresting the rapid progress of erosion of the bay bluff. It was well designed and well constructed, and has done its work very well, and is still in good condition, although in need of some repairs. The bluff between the city and the bay has been an effective natural breakwater and seawall, and even in the time of the worst hurricanes, no seawater except in the form of spray has come into the city over the bluff, except in a couple of places where a wash or gully runs from low places in the bluff into the town, and on Cypress Street, which, for about two blocks, forms a sort of wash from a low spot in the bluff. The bluff generally is in good condition.

"8. The city is quite flat, but there is no natural drainage from the city towards or over the top of the bluff. In the greater portion of the district represented by Exhibit I of the Study and Report, the natural

slope of the land is away from the bluff in a westerly direction, or in the northerly portion of town, towards what is known as Lynns Bayou. Even in times of the worst hurricanes, and heaviest rains, no injury has been caused the bluff or seawall by reason of any water, rain or sea, running or draining over the bluff or over or to the seawall. The system of storm drains as provided in the Study and Report of Messrs. Freese, Nichols & Turner, and adopted by the city in its ordinance, if installed, could not and would not be of any protection or service to the seawall and bluff, or either of them.

"9. The only connection or relation which the system of storm sewers called for in the plan adopted by the city, and which it intends to install, will have with the existing bluff and seawall when installed is that according to the plan, the pipes would run through the bluff and empty into the bay over the top of the seawall. Under the testimony in this case, and under the conditions existing in Port Lavaca as shown by the evidence, such system of storm sewers when installed, would not be a component part of the seawall and breakwater protection project of the city of Port Lavaca. Such system of storm sewers is not, in any manner, made necessary by reason of the existence either of the bluff or the seawall proper. Such system of storm sewers, when installed as contemplated by the plan of the engineers as approved and adopted by the city ordinance in question would not afford any essential aid to the seawall or to the bluff in getting rid of storm waters that come over the seawall during Gulf hurricanes.

"10. I find from the evidence that the problem before the city officials which they seek to remedy by adopting the plan of storm sewers as provided in Plan 1 of the engineers' Report and Study is a drainage problem, and not a seawall and breakwater project. Such problem is not attributable to or caused by the construction of or existence of the seawall or bluff in such way as to make said drains a component part of the seawall or breakwater protection.

"11. The storm drainage project as approved by the city in the ordinance in question would not be of assistance to the seawall and bluff in performing their function of giving protection to the lives and property of the citizens of Port Lavaca. The seawall proper and bluff protecting the city of Port Lavaca from the sea can adequately function as a seawall and breakwater without the aid that this storm system, or some other similar drainage system, might afford.

"12. On occasions during Gulf storms and hurricanes sea water in the form of spray has been blown over the seawall and bluff into the Town of Port Lavaca by the force of wind and heavy rains have fallen on the city. This combined rain and sea water has on such occasions accumulated in some of the lower spots of the town and has sometimes remained for varying periods of time, usually a day or two, until it drained off through the drainage facilities afforded by the City. The plan of proposed storm drains recommended by the engineers in Plan I of the Report is a feasible engineering plan to drain from that portion of the City included in such plan such combined sea and rain water, as well as any other rain water falling on the City on occasions other than storms and hurricanes.

"13. That portion of Plaintiffs' Exhibit No. 3, being the Study and Report of the engineers, which recommended the expenditure of approximately $32,000. for the repair and reinforcement of the existing seawall along its south end is not in dispute in this case, as it is conceded by all parties that such project would come within the provisions of an expense which could be made by the City out of the Seawall and Breakwater Fund.

"14. Plaintiff and intervenors have no adequate remedy at law, and would suffer irreparable injury in the event the relief they seek would be denied."

In substance the Conclusions of Law were that the plaintiff Bauer was legally entitled to bring the suit and the court has jurisdiction thereof; the money in the Sea

Wall and Breakwater Fund could be lawfully spent by the city on any project or work which concerns necessary or component part of the breakwater protection of said Port Lavaca which will afford necessary aid to the sea wall and breakwater in disposing of excess water which comes into the city by way of the sea wall during times of hurricanes and other high water; such money can not lawfully be spent in the installation of a system of storm drains as provided in Plan No. 1 of the Study and Report of Messrs. Freese, Nichols & Turner; said city of Port Lavaca cannot lawfully use said fund to pay any engineering fee for any work in connection with said plan for drainage.

The appellants brief this case under six points of error. Point 1, that plaintiff and intervenors have no interest in the subject matter of this cause sufficient to entitle them, or any of them to institute and maintain this suit; Point two, the City of Port Lavaca is authorized to construct a system of storm drains with the proceeds of sea wall and breakwater bonds; and the trial court erred in enjoining the City's undertaking to construct the same; Point three, the legislative determination of the governing body of the City of Port Lavaca that the storm drains "will best provide the desired protection from calamitous overflows" and "will constitute an integral part of the city's sea wall and breakwater protection" is not the proper subject of injunctive interference in the absence of a supported finding that the said determination is fraudulent, arbitrary, or capricious; and no such finding having been made, the trial court erred in overturning such determination and granting injunctive relief; Point four, the trial court erred in holding that the proposed system of storm drains is not an integral part of the sea wall protection of the City of Port Lavaca from Gulf storms within the legislative intent of Acts of 1941, Regular Session, Page 780, Chapter 485, House Bill 821; Point five, the storm drainage program planned by the City of Port Lavaca is an integral part of the sea wall and breakwater protection of the city from Gulf storms and the trial court erred in finding to the contrary; and Point six, the

trial court erred in finding that the proposed storm drains will "not afford any essential aid to the seawall or the bluff in getting rid of storm waters that come over the seawall during Gulf hurricanes".

In disposition of Point of Error No. One we shall not consider as to the right or authority of the numerous intervenors to maintain this suit but shall confine ourselves to the plaintiff W. H. Bauer.

If in truth and in fact there was contemplated an unlawful expenditure of the Sea Wall and Breakwater Construction Fund, in our opinion the plaintiff, as a tax paying citizen of the town of Port Lavaca, had a right to enjoin such expenditure. City of Austin v. McCall, 95 Tex. 565, 68 S.W. 791; Terrell v. Middleton, Tex. Civ.App., 187 S.W. 367; Anderson y. Houts, County Judge, Tex.Civ.App., 240 S.W. 647. The law authorizing the creation of the fund in question limits and defines the purposes for which it may be expended. If expended for any other purpose and manner than authorized by the Constitution and the Special Act, such expenditure is illegal and may be enjoined by a tax paying citizen. This money was raised by taxation, and by the very law authorizing the creation of the fund it is provided: "The proceeds of the sale of such bonds may be used for the purpose of constructing, repairing, and improving seawalls, breakwaters, and harbors to protect said locality from such calamitous overflows". General and Special Laws, 47th Legislature, Chap. 485, p. 780.

Points of error two, three, four and five are briefed together. Each and all in substance assert that the City of Port Lavaca was authorized to construct a system of storm drains with the proceeds of the sea wall and breakwater bonds; are authorized to do so because there is no evidence that the decision of the City Council so to do was arbitrary or capricious; that the proposed storm drains is an integral part of the sea wall and breakwater protection. In its Findings of Fact the trial court in substance found against each of these contentions.

Without the factual basis required by the Constitution and Tax Remission Act, the

ordinance authorizing the use of the proceeds of the sale of the Sea Wall and Breakwater bonds for storm sewers would be void. The legislative body of the City of Port Lavaca, that is, its Mayor and Commissioners, passed on the fact and presumptively found that storm sewers as provided for in the ordinance would be auxiliary to and in aid of the protection afforded by the sea wall. The sea wall had theretofore been constructed under a prior tax remission law. There is presumption in favor of this ordinance. If under the surrounding facts it is reasonably issuable that in connection with the sea wall these storm sewers will aid in affording the protection contemplated by the Constitution and Tax Remission Act, then it might be fairly said that the storm sewers would be an integral part of the sea wall protection, otherwise they would not be component parts thereof. Appellants rely largely on two cases, First National Bank of Port Arthur v. City of Port Arthur, Tex.Civ.App., 35 S.W.2d 258, and White v. City of Port Arthur, Tex.Civ. App., 201 S.W.2d 65. In neither of these cases was there an application to the Supreme Court for a writ of error. The case of First National Bank v. City of Port Arthur, supra, has much in common with the case we have before us. There it was held that as a matter of law a storm drain which had existed before the sea wall and which was at right angles to the sea wall was a necessary and a component part of the sea wall and payment of the costs of extensive improvements thereon were properly payable out of sea wall bonds. Unless distinguishable on the facts this case is parallel with our instant case. There, however, the drain was in existence before the sea wall. The sea wall would interfere with the function of the drain. We deduce from the facts stated in the opinion that the city of Port Arthur sloped toward the sea wall. If this were the case we think beyond question the construction of the sea wall created a drainage problem; the normal and ordinary drainage of the city of Port Arthur was interfered with.

In the instant case the problem as to drainage for the City of Port Lavaca was not created by the erection and maintenance of the sea wall. The spray from the sea and the torrential rains accompanying the storms were not prevented from draining from the streets by the existence of the sea wall. The problem as to drainage was the same after the construction of the sea wall as it was before its construction. We gather from the findings of fact and the Statement of Facts that the city is protected by a bluff. The sea wall serves as a sort of binder, preventing the sea from causing this bluff to erode away. This difference as to the surrounding facts is perhaps the distinction between the two cases.

The findings of fact of the learned trial judge in substance are that the City of Port Lavaca has had and has at all times a drainage problem. This drainage problem was not created by the construction of the sea wall and in fact is perhaps not affected thereby. Sea spray blown over the sea wall and the accompanying torrential rains, collect over a large area of the streets of Port Lavaca. It requires a substantial period of time for such accumulated and concentrated waters to drain therefrom through or by means of ordinary and natural drainage. The plan proposed by the ordinance passed by the legislative body of the city will afford this needed drainage. There was evidence the concentration of sea and storm waters in the streets is from time to time considerable, and for periods of time at least renders the streets impassable, interferes with the normal sewer facilities of the town, and creates a situation dangerous to health and destruction of property. Beyond any question the storm sewers will afford a protection against the results of calamitous overflows which the sea wall cannot prevent. If the storm sewers as contemplated by the ordinance are in fact a component and incidental part of the sea wall and breakwater protection authorized by the Constitution and Statute, it is because the sea wall and storm sewers, operating in co-ordination, serve as a joint means of protection of the city from calamitous overflows.

Appellant relies strongly upon the case of First National Bank of Port Arthur v. City of Port Arthur, Tex.Civ.App., 35 S.W.2d 258, 261. This case in some re-

spects is almost a parallel case to the instant case. There it was held that the city of Port Arthur had the legal right under the Constitution and the applicable statute to expend money raised in almost exactly the same manner as the money here was raised, for the construction and repair of what was called the Stilwell Storm Drain in the City of Port Arthur. In that case, in the course of the opinion Judge Hightower quotes a counter proposition of the appellee as follows: " 'The object and purpose of section 8, article 11 of the Constitution being to protect counties and cities bordering on the Gulf Coast against calamitous overflows, it will be construed in a broad way so as to accomplish its purpose, and the undisputed facts showing that the storm sewer being constructed for which the bond money in question is being spent is a component part of the seawall protection project of the city of Port Arthur and made necessary by the construction of the seawall proper, the court would not err in holding that the expenditures involved were not in violation of said article of the Constitution.' " It is held that the record sustained this counter-proposition. In the course of the opinion it is further said: "It is clear from the testimony of these engineers that it is their opinion that the seawall proper cannot adequately function as a seawall by giving the protection to the city of Port Arthur without the aid that the Stilwell Storm Drain or some other similar structure will afford. It is true that all of these engineers testified that the seawall itself, that is, the physical structure itself, would stand and resist the force of wind and waves and the effect thereof to a certain extent without the assistance of the storm drain, but it is equally clear from the testimony of these engineers that this Stilwell Storm Drain, located as it is and attached to the seawall as it is, will not only be of great benefit to the city of Port Arthur in the ordinary drainage work of the city, but that this drain is also essential and necessary in the case of gulf hurricanes which are always accompanied by heavy rainfalls. In other words, the testimony of these engineers is to the effect that even as to the gulf waters that come over the seawall during the raging of gulf hurricanes the Stilwell Storm Drain is necessary and essential to take care of that character of flood water and remove it as quickly as possible over the seawall for the protection of the city." It may be that in case of the city of Port Arthur the drainage was toward the sea wall; what it did afford was protection against the result of calamitous overflows. It is true here, we think, that the construction of the storm sewer as contemplated will serve to protect the city from the result of calamitous overflows. The sea wall in question seems to have functioned efficiently in protecting the city from waters flowing from the sea over the bluff. It would seem, however, that it is insufficient to protect the city from a concentration of water from sea spray blown over the wall, and torrential rains accompanying the sea storms, or hurricanes, which occur with some frequency along the coast. In the case of White v. City of Port Arthur, Tex.Civ. App., 201 S.W.2d 65, 67, it is said: "There is ample evidence in the record to warrant a finding as a fact that the City of Port Arthur was building and is building as an additional part of its sea wall project an extensive drain system and large drainway from one section of the city to the point at which the proposed pumping station would lift water from the enclosed city over or under the sea wall into the Sabine-Neches canal; that in the judgment of its engineers this location was suitable and proper as a place at which to locate the pumping station". Now this pumping station was used to drain the water from the streets of Port Arthur, the same collecting therein in substantially the same manner as in the instant case. It is there said: "On the authority of First Nat'l Bank of Port Arthur v. the City of Port Arthur, Tex.Civ.App., 35 S.W.2d 258, by this court, the proposed pumping station must be considered to be an essential and necessary and component part of the sea wall project of Port Arthur and when completed will be a part of the sea wall project." It is further held that the courts will not interfere with any reasonable action of the sea wall authorities in the furtherance of their duties and the discharge of their responsibilities to erect

and maintain for the public benefit adequate sea walls and drainways. In the case of First National Bank of Port Arthur v. City of Port Arthur, supra, Judge Hightower quotes from the opinion of Chief Justice Phillips in Aransas County et al. v. Coleman-Fulton Pasture Co., 108 Tex. 216, 191 S.W. 553, as follows: "The spirit, purpose and scope of the particular provision are all to be consulted in the effort to determine with certainty the meaning of its terms." Judge Phillips was speaking of a Constitutional provision, in fact, Section 52, Article 3 of the Constitution.

■ Applying that rule here, as it was applied by Judge Hightower in the case of First Nat'l Bank of Port Arthur v. City of Port Arthur, supra, it is our opinion that the use of money by the sea wall authorities in the manner proposed is not in violation of our Constitution, not in violation of the Tax Remission Act under which these bonds were issued.

The trial court found such system of storm sewers is not in any manner made necessary by reason of the existence of either the bluff or sea wall proper, such system of storm sewers when installed as contemplated by the plan of the engineers as approved and adopted by the city ordinance in question would not afford any essential aid to the sea wall or bluff in getting rid of the storm waters that come over the sea wall during gulf hurricanes. This fact is obvious. The sea wall, in connection with the bluff, was not designed to get rid of storm waters that come over same during hurricanes. In substance the court found on occasions during Gulf storms and hurricanes sea waters and spray have been blown over the sea wall and bluff into the town of Port Lavaca by the force of the wind, and heavy rains have fallen on the city. This combined rain and sea water has on such occasions accumulated in some of the lower spots of the town and sometimes remained for varying periods of time, usually a day or two, until it drained off through the drainage facilities afforded by the city. The plan of proposed storm drains recommended by the engineers is a feasible engineering plan to drain from that portion of the city included in such plan such combined sea and rain water, as well as any other rain water falling on the city on occasions other than storms and hurricanes.

The purpose of the Constitutional provision authorizing the construction of the sea walls and remission of State taxes in aid thereof is primarily for the purpose of protection from the encroachments of the sea, from which on account of their situation with reference to the sea the localities to which it is applicable suffer. From the findings, the sea wall and bluff function and have functioned well in preventing the encroachment of the waters of the sea, but they seem to have failed to solve the entire problem. Each installation, co-operating with the other, may do its part in preventing damage from calamitous overflows. By way of illustration the sea wall in connection with the bluff might prevent the destruction of the city; the storm sewers are effective as to a situation the sea wall installation can not prevent, can not affect. In our opinion the sea wall, working in conjunction with the storm sewers as contemplated by the ordinance, give the protection for which the Constitution and Legislative Act authorized the collection and expenditure of money. It would be hard to conceive of any system of drainage that would not incidentally function as to water collected or caused to collect in the city other than by hurricanes and storms. If we properly understand the case of First Nat'l Bank of Port Arthur v. City of Port Arthur, supra, this incidental benefit was not considered to render expenditure of money arising from the bonds illegal.

■ At the time the Legislature passed the Port Lavaca Tax Remission Act in 1941 the case of First National Bank of Port Arthur v. City of Port Arthur, supra, had been handed down and published. The sea wall, substantially as it exists today, had been long constructed and functioning, and was functioning well. It is thought that a knowledge of this case must be attributed to the Legislature at the time they authorized the issuance of these $300,000 worth of bonds; information that $300,000 was not required for the maintenance of this sea wall or for its extension. A legislative construction of the organic law of the State

is perhaps not absolutely binding on the judicial department, but should receive careful and respectful consideration in determining the scope of power conferred on the legislative department. Further, if under the evidence it is a debatable issue as to whether or not the action proposed would further the end sought by the provision of the Constitution and the law, the action of the legislative body—in this case the City Commission of the City of Port Lavaca—is binding.

Despite the findings of the learned and careful trial judge to the contrary, it is thought that these storm sewers when constructed will, in conjunction with the sea wall, afford the City of Port Lavaca the protection contemplated by the applicable Constitutional provision, that is, Section 8, Article 11, and the applicable Act of the Legislature. In our opinion from the evidence this appears as a matter of law. It is therefore ordered that the judgment of the trial court be in all things reversed and judgment is here rendered that the petitioner and intervenors take nothing as against the defendants.