**TENNESSEE GAS TRANSMISSION COMPANY, Appellant,**

v.

**Harry L. MARTIN, Appellee.**

No. 3482.

Court of Civil Appeals of Texas.

Eastland.

Jan. 8, 1960.

Baker, Botts, Andrews & Shepherd, Houston, for appellant.

Vinson, Elkins, Weems & Searls, Houston, for appellee.

WALTER, Justice.

This is a venue case. Tennessee Gas Transmission Company filed suit against Harry L. Martin for a declaratory judgment that it had the right to purchase gas produced from a well owned by Martin located on a 7.44 acre tract of land in Hidalgo County, Texas. Martin asserts in his plea of privilege that venue is governed by Section 14 of Article 1995, Vernon's Ann.Civ. St. The Court sustained the plea of privilege and the plaintiff has appealed on one point: "If it be assumed that the contracts on which plaintiff relies create an interest in land, they are nevertheless executory

contracts and this suit is a personal action to establish rights under such contracts. As such, the venue is not controlled by Subdivision 14."

Appellant will be referred to as Tennessee and appellee as Martin. We must look to the allegations in Tennessee's petition to determine the nature and dominant purpose of its cause of action. The allegations in Tennessee's petition determine whether its suit comes within the provisions of Subdivision 14 of Article 1995. Renwar Oil Corp. v. Lancaster, 154 Tex. 311, 276 S.W. 2d 774; Clark, Venue in Civil Case, Vol. 1, pages 96, 97.

Tennessee alleges in its petition that "plaintiff, by virtue of contracts entered into between it and prior owners of the minerals in and under said tract, which contracts are now and at all material times have been in full force and effect, has the right to purchase the gas produced from said well." Tennessee also pleaded the following: that Martin refuses to permit it to connect its lines to said well and that Martin is attempting to sell the gas produced from said well elsewhere; that in 1955 companies owning the leasehold estate in said 7.44 acre tract entered into a contract with Tennessee to sell it gas from this and other tracts; that, "by virtue of the provisions of said contracts and their approval by the Federal Power Commission, all gas which can be produced from said 7.44 acre tract, as well as the other tracts described therein, became and still is dedicated to plaintiff for transmission through its lines in interstate commerce to serve the consuming public in other states"; that in February, 1957, Sinclair and Atlantic created the "West Gas Unit No. 1" for production of gas from the Heard sand; that the 7.44 acre tract was placed in said unit; that Sinclair and Atlantic completed a gas well from the Heard sand in said unit and that Tennessee has at all material times been purchasing the gas produced from said unit under its contracts; that in March, 1958, the Hidalgo

Water Control & Improvement District Number 6, hereafter called district, conveyed to Martin all of the oil, gas and other minerals in and under several tracts of land in Hidalgo County, including the 7.44 acre tract; that at the time Martin received said conveyance, Tennessee was taking gas from a well on said West Unit Number 1; that Martin had full knowledge of Tennessee's rights and that whatever interest he acquired was, and still is, subject to Tennessee's rights under said gas purchase contracts and the dedication to Tennessee of any gas which might be produced from said 7.44 acre tract; that the district was contending that some of the oil and gas leases had expired on property placed in the unit and the oil companies were contending that said leases were in full force and effect and in order to settle said controversy, the oil companies released two of their leases as to all horizons except the Heard sand; that, "In this connection Plaintiff alleges that at the time of the execution of said release and compromise agreement, the two leases referred to therein and particularly the lease of February 12, 1952, (this covers the 7.44 acre tract), were in full force and effect as to all horizons"; that the release and the compromise agreement between the oil companies and the district and Martin were not binding on it and contended that by releasing the lease of February 12, 1952, as to all horizons except the Heard sand, said parties could not, as a matter of law affect or in any way impair the dedication to Tennessee of gas which might be produced from said tract; that whatever rights were acquired by the district and Martin under said releases and compromise agreement are subject to Tennessee's rights under its gas purchase contracts.

Tennessee's prayer for relief asks for a judgment declaring its right to purchase under its gas purchase contract from the well drilled by Martin on said 7.44 acre tract of land "and to permit it to connect its gathering line to said well and to commence taking therefrom". Tennessee also prayed for a judgment declaring that Martin has no right to sell or dispose of his production from said 7.44 acre tract to any other person, firm or corporation.

From the allegations Tennessee contends that the lease on the 7.44 acre tract of land is in full force and effect as to all horizons and that the oil companies' release as to all horizons except the Heard sand did not in any manner impair the dedication to it of gas which might be produced from any horizon under said tract. From such allegations Tennessee contends that Martin purchased the minerals under said tract subject to and burdened with its right to purchase gas therefrom. In Tennessee's petition and prayer for relief it asked for a judgment granting it the right to go upon said tract of land and lay its gathering pipe lines. This, in effect, was an assertion that it was entitled to an easement which is an interest in land. See Magnolia Pipe Line Co. v. Moore, Tex.Civ.App., 292 S.W.2d 142 (Writ Dism.).

The parties stipulated that the 7.44 acre tract of land was located in Hidalgo County, Texas. The only remaining venue fact is whether or not Tennessee's cause of action as set forth in its petition brings it within the provisions of Section 14 of Article 1995, Vernon's Ann.Civ.St. We have concluded that it does come within such provisions and that the judgment should be affirmed.