

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

July 7, 1961

Honorable Price Daniel
Governor
Austin, Texas

Dear Governor Daniel:

Opinion No. WW-1085

Re: Constitutionality of the Eckhardt
Bill levying a gas production tax
on severance producers and dedi-
cated reserve producers.

You have requested the opinion of this office regarding the
constitutionality of the Eckhardt Bill, a copy of which is attached to
this opinion for reference purposes.

This bill levies a gas production tax in addition to the tax
levied by Article 3.01 of Chapter 3, Title 122A, Taxation General
V. A. T. S. and amends said Chapter 3 by adding a new article to be
designated Article 3.11. The tax is levied on the "residue gas" as that
term is defined in the bill and the rate is on an M. C. F. basis, and
calculated so that all gas severed from the earth and waters of this
State shall be taxed at least at the rate of one cent per thousand cubic
feet, including the seven per cent of value taxed by Article 3.01. The
additional tax (which applies only when gas is not being taxed at a rate
equal to or greater than one cent per M. C. F.) is levied against the
producer, except where there is a "dedicated reserve contract" be-
tween a producer and a "dedicated reserve producer", in which event
the additional tax is levied against the "dedicated reserve producer. "
"Dedicated reserve producer" is defined as follows:

> "'Dedicated reserve producer' means any person hold-
> ing a written contract for a designated term specified
> therein, which confers upon such person the right to take
> title to gas from particular lands, leases and reservoirs
> in this State and imposes upon a severance producer the
> duty to supply all or a designated quantity or portion of
> gas produced by that severance producer (or by that
> severance producer in conjunction with other severance
> producers) to the dedicated reserve producer at a fixed
> or determinable price. "

and "dedicated reserve contract" is defined as follows:

> " ' Dedicated reserve contract' means a written contract
> for a designated term specified therein, which confers
> upon a dedicated reserve producer the right to take title
> to gas from particular lands, leases and reservoirs in
> this State, and imposes upon a severance producer the
> duty to supply all or a designated quantity or portion of
> gas produced by that severance producer (or by that
> severance producer in conjunction with others) to a dedi-
> cated reserve producer at a fixed or determinable price. "

As this bill levies a gas production tax it does not violate the commerce clause of the United States Constitution.  A tax is not a burden upon interstate commerce if the taxed incident is separable and attributable to a local activity, even though such incident or activity arises exclusively from transactions in interstate commerce.  See City of Chicago v. Willett Co. , 344 U.S. 574, (1953), and Pacific T. & T. v. Tax Commission, 297 U.S. 403, (1936).  Production is strictly a local activity.  A tax on production or severance does not violate the commerce clause even though the article or commodity produced or severed is immediately destined for transportation in interstate commerce.  Oliver Iron Mining Company v. Lord, 262 U.S. 172, (1923); Hope Natural Gas Co. v. Hall, 274 U.S. 284, (1927); Utah v. Pfost, 286 U.S. 165 (1932); Toomer v. Witsell, 334 U.S. 385, (1948); Michigan-Wisconsin v. Calvert, 347 U.S. 157 (1954).

As Texas gas can only be produced in Texas, the taxable inci-dent, which is production, cannot be levied by any other state and thereby subject interstate commerce to multiple taxation.  See Cover-dale v. Arkansas-Louisiana, 303 U.S. 604 (1938).

Dedication contracts between producers and "dedicated reserve producers, " as they exist in the industry, definitely appear to create substantial and beneficial interests in the "dedicated reserve producers" which will sustain the tax.  Such contracts dedicate and set aside prior to production certain gas under particular lands, leases or within certain reservoirs, confer upon the "dedicated reserve producers" the preferen-tial and exclusive right to take title to the gas when it is produced under the contract, and obligates the producers to sever the gas and do all other acts necessary to make the gas conform to contract specifications for delivery to the "dedicated reserve producers. " Support for the pro-position that the "dedicated reserve producers" in this situation acquire a taxable interest in production is found in the following cases:

Barwise v. Sheppard, 299 U.S. 33 (1936);
Canadian River Gas Company v. Bivins, 137 Tex.
347, 153 S.W. 2d 432 (1941);
Cities Service Oil Company v. McCrory, 191 S.W.
2d 791 (Tex. Civ. App. , 1941, no writ hist. );
Sheppard v. Stanolind Oil & Gas Company, 125
S.W. 2d 643 (Tex. Civ. App. 1939, err. ref. );
Southwest Pipeline Company v. Empire Natural
Gas Company, 33 F. 2d 248 (C. C. A. , 8th Cir. , 1929);
Greenshield v. Warren Petroleum Corporation, 248
F. 2d 61 (C. C. A. , 10th Cir. , 1957);
Graham v. Omar Gasoline Company, 253 S.W. 896;
American Refining Co. , et al. v. Tidal Western Oil
Corporation, 264 S.W. 335 (Tex. Civ. App. , 1924,
error ref. )

See also

Tennessee Gas Transmission Company v. Martin,
331 S.W. 2d 947 (Tex. Civ. App. , 1960).

As the tax is equal and uniform against all persons similarly circumstanced and all taxpayers are treated alike, this bill does not violate the equal protection clause of the Fourteenth Amendment of the United States Constitution, or the equality and uniformity requirements embodied in Sections 1 and 2 of Article VIII of the Constitution of Texas.

The equal protection clause and the provisions of a state constitution requiring equality and uniformity of taxation impose identical restrictions upon the State. National Tea Co. v. State, 286 N.W. 360 (Minn. Sup. Ct. , 1939); and see Union Bank and Trust Co. v. Phelps, 288 U.S. 181, 53 S.Ct. 321 (1933); and Brown County, Texas v. Atlantic Pipe Line Co. , 91 F. 2d 394 (C. C. A. , 5th Cir. , 1937). These restrictions have been said to be "extremely limited." Wisconsin v. J. C. Penney Company, 311 U.S. 435, 61 S.Ct. 246 (1940). It is recognized that absolute equality in taxation is impossible of attainment. Atchison, T. & S. F. Ry. Co. v. Collins, et al., 294 F. 742, 745 (U. S. D. C. , N. D. Cal. , 1923), appeal dis. 267 U.S. 609. Hence, it is well settled that a state legislature has a wide range of choice in classifying and limiting the subjects of taxation. Henneford, et al. v. Silas Mason, 300 U.S. 577, 57 S.Ct. 524 (1937), and cases there cited; see also Keeney v. Comptroller of the State of New York, 222 U.S. 525, 32 S.Ct. 105 (1912); Rivera v. Buscaglia, 146 F. 2d 461 (C. C. A. , 1st Cir. , 1941).

This bill also provides for an alternative tax at the rate of one-fourth of one cent per thousand cubic feet. This bill provides that this alternative tax shall only be levied in the event that the tax above discussed is unconstitutional. For the reasons above discussed, this alternative tax is also constitutional.

We have carefully examined all the provisions of this bill in light of the various provisions of the United States and Texas Constitutions, and we are of the opinion that this bill is not violative of any constitutional provision and is in all things constitutional.

## SUMMARY

The Eckhardt bill, a copy of which is attached hereto, is constitutional.

Yours very truly,

WILL WILSON
Attorney General of Texas

By: _W. V. Geppert_

W. V. GEPPERT
Assistant Attorney General

APPROVED:

OPINION COMMITTEE:

Morgan Nesbitt, Chairman
J. C. Davis
Riley Eugene Fletcher
Jack Goodman
Bob E. Shannon

REVIEWED FOR THE ATTORNEY GENERAL
BY:        Leonard Passmore

H. B._____                    By_____


## A BILL

## TO BE ENTITLED


AN ACT amending Title 122A, Chapter 3, by adding a new
Article 3.11 levying a tax on the occupation of produc-
ing gas as a severance beneficiary, which tax is in the
amount of the difference between the present tax on
producers levied under Article 3.01 and one cent per
MCF, with certain exceptions; providing alternatively,
if the same be held invalid, that a tax of one-fourth
cent per MCF shall be levied against severance bene-
ficiaries, with certain exceptions; providing provisions
incidental to the accomplishment of the above purposes;
providing for the allocation of the proceeds; repealing
Chapter 22 of Title 122A and all laws in conflict with
this Act; providing for severability; and declaring an
emergency.


BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:


Section 1.   That Title 122A, Chapter 3, Vernon's Revised Civil

Statutes of Texas be amended by inserting a new article after Article 3.10,

denominated Article 3.11, to read as follows:

"Section 3.11   Dedicated Reserve Tax.

"(1)  Declaration of Policy.

"It is the policy of this State to obtain as near as may be, consistent

with a fair and equitable tax policy, a tax return to the State of not less than

one cent per MCF on each MCF of natural gas produced and saved from the earth and waters of this State. The same is deemed necessary

"1. to derive a reasonable State revenue from the trillions of cubic feet of gas removed from the earth and waters of the State each year, and

"II. to tax equitably all of those persons integrally engaged in the occupation of removing such gas, so that one associated group of them will not derive a windfall by virtue of a very small tax burden on each thousand cubic feet of gas produced by them, and others will not be discriminated against because of a comparatively large tax burden on each thousand cubic feet of gas produced by such others.

"It is further the policy of this State, in order to promote conservation and to distribute equitably the burden of natural resources taxation, to recognize and clarify fully by statute the relation between various persons engaged in the occupation of producing natural gas so that the taxpayer in each instance may be identified clearly, and so that all persons so engaged in the occupation of production will bear equitably the taxes imposed in connection with the severance of gas from Texas soil.

"Pursuant to this policy it is recognized that contractual relations exist in such natural gas production occupation between several definable groups, all engaged integrally in such occupation of severance of natural gas from the soil and all having such a direct and beneficial interest in the production of gas that for the purpose of taxation they may be classified as producers of gas. It is the policy of the State of Texas to recognize that all such persons, integrally engaged in the occupation of severance of natural gas from the soil - producers,

-2-

severance producers and dedicated reserve producers – have a taxable interest in production of gas in Texas.

"(2) Definitions.

"The definitions contained in Article 3.04, insofar as applicable, shall govern the meanings of the terms used in this Article. In addition, the following definitions are specifically applicable to this Article:

"(a) 'Severance producer' means any person owning, controlling, managing, or leasing any gas well and/or any person who produces in any manner any gas by taking it from the earth or waters of this State, and shall include any person owning any royalty or other interest in gas or its value, whether produced by him, or by some other person in his behalf, either by lease or contract or otherwise, when such person producing gas is in contractual relation with the dedicated reserve producer (either directly, or, if a royalty or other holder of an interest in gas in place and thereby entitled to a fractional share of the value of such gas in place, indirectly through the producer).

"(b) 'Dedicated reserve producer' means any person holding a written contract for a designated term specified therein which confers upon such person the right to take title to gas from particular lands, leases and reservoirs in this State and imposes upon a severance producer the duty to supply all or a designated quantity or portion of gas produced by that severance producer

-3-

(or by that severance producer in conjunction with other severance producers) to the dedicated reserve producer at a fixed or determinable price.

"(c) 'Severance beneficiary' has the following meaning:

"I.   In the case where there is in effect a dedicated reserve contract as to the gas in question, the term 'severance beneficiary' refers to the dedicated reserve producer

"II.   In the case where there is no dedicated reserve contract in effect as to the gas in question, the term 'severance beneficiary' refers to the producer.

"(d) 'Dedicated reserve contract' means any written contract for a designated term specified therein which confers upon a dedicated reserve producer the right to take title to gas from particular lands, leases and reservoirs in this State, and imposes upon a severance producer the duty to supply all or a designated quantity or portion of gas produced by that severance producer (or by that severance producer in conjunction with others) to the dedicated reserve producer at a fixed or determinable price.

"(e) I.   Meaning of Residue Gas.

"A.   As to gas from which liquefiable hydrocarbons are removed 'residue gas' means that constituent part of the whole quantity of gas removed from the earth and waters of this State which eventually constitutes the residue. The tax is applicable under the terms of this Article to such constituent part of the whole quantity of gas at the time when it, along with the associated gasoline or other liquefiable hydrocarbons, is actually severed from the earth and waters of this State.

-4-

"B.  As to gas from which liquefiable hydrocarbons are not removed 'residue gas' means the entire quantity except that gas which is

> (i)   injected into the earth, unless sold for such purpose;
>
> (ii)  produced from oil wells with oil and lawfully vented or flared; or
>
> (iii) used for lifting oil, unless sold for such purpose.

"II.  How Measured

"Such residue gas shall be measured by determining that portion of gas containing gasoline or other liquefiable hydrocarbons (that are to be removed or extracted at a plant by scrubbing, absorption, compression, or any other process) which is left after the application of such process and which flows through the outlet of such plant.  In the event that such gas is processed in more than one such plant, the residue gas content shall be measured as that portion of the gas which flows through the outlet of the first plant.

"As to that gas which passes through a separator and which is not processed in a plant to remove or extract the gasoline or other liquefiable hydrocarbons, the residue gas content shall be measured as that portion of the gas remaining after its passage through such separator.  In the event that such gas passes through more than one separator, the residue gas content shall be measured as that gas remaining after the passage through the first separator.

"As to that gas which passes through a drip or trap and which does not pass through a separator and which is not processed in a plant to remove or

extract gasoline or other liquefiable hydrocarbons, the residue gas content shall be measured as that portion of the gas remaining after passage through such drip or trap. In the event that such gas passes through more than one drip or trap, then the residue gas content shall be measured as that portion of the gas remaining after its passage through the last drip or trap.

"As to that gas which passes through a meter and which does not pass through a drip or trap and which does not pass through a separator and which is not processed in a plant to remove or extract the gasoline or other liquefiable hydrocarbons, the residue gas content shall be measured as that portion of the gas remaining after it passes through such meter. In the event that such gas passes through more than one meter, then the residue gas content shall be measured as that gas which passes through the first meter.

"(f) 'MCF' means thousand cubic feet.

"(3) The Tax Herein Levied.

"(a) There is hereby levied, in addition to all other occupation taxes on the occupation of producing gas in Texas, an occupation tax on the business or occupation of producing gas within this State as a severance beneficiary at the rate of one cent per thousand cubic feet of residue gas produced, applicable at the time the said gas is severed from the earth or waters of this State, less the amount of tax paid per MCF under the provisions of Article 3.01 of this Chapter, computed in the following manner:

-6-

"In the case of all gas subject to the tax imposed by Article 2.01 there shall be ascertained the amount of tax in cents and fractions of a cent per thousand cubic feet paid to the State with respect to each quantity of such gas by virtue of the seven per cent of value tax provided in that Article. If such amount is less than one cent per MCF, then there shall be determined the difference between such amount and one cent per MCF. Such amount multiplied by the quantity of the residue gas in question shall constitute the tax obligation of the severance beneficiary of such residue gas.

"(b) The above is subject to the following exception:

"Without regard to any other provision of this Chapter no producer producing natural gas from a newly discovered field shall be required to pay more than the seven per cent of the market value of gas therefrom produced until establishment of the first field rules for such field by the Railroad Commission or until the passage of six months from the date of the first discovery of natural gas in such field, whichever time shall be the shorter.

"(4) <u>Alternative Computation of Tax.</u>

"(a) If the method of levy of the tax as set out in Par. (3) above is held unconstitutional after application of the severability clause hereinafter set forth, or if the same is held not to be effective to levy a tax based on the difference between the seven per cent of value tax levied in Title 122A, Chapter 3, Article 3.01, and one cent per thousand cubic feet, which tax is to be paid

-7-

by dedicated reserve producers and/or producers under the terms of this Act as the same may finally be interpreted, then the following additional tax (above the said seven per cent tax) shall apply:

"There is hereby levied in addition to all other occupation taxes on the occupation of producing gas in Texas an occupation tax on the business or occupation of producing gas within this State as a severance beneficiary, at the rate of one-fourth cent per MCF of residue gas produced.

"(b) The above is subject to the following exception:

"Without regard to any other provision of this Chapter no producer producing natural gas from a newly discovered field shall be required to pay more than the seven per cent of the market value of gas therefrom produced until establishment of the first field rules for such field by the Railroad Commission or until the passage of six months from the date of the first discovery of natural gas in such field, whichever time shall be the shorter.

"(5) Collection of Tax.

"(a) The tax hereby levied shall be a liability of the severance beneficiary. It shall be his duty to keep accurate records of all gas produced and all matters reasonably necessary or pertinent, as determined by the Comptroller, for the calculation and collection of the tax. The severance beneficiary shall remit the tax additionally levied by this Article. The tax levied herein shall be due and payable at the Office of the Comptroller of Public Accounts at Austin on the last

day of the calendar month. Each person liable for the tax imposed herein shall make and deliver to the Comptroller a verified report on forms furnished by the Comptroller showing such information as the Comptroller may deem necessary for the administration and enforcement of this Article. Such report shall be accompanied by legal tender or cashier's check payable to the State Treasurer for the proper amount of taxes herein levied.

"(b) The Comptroller shall employ auditors and/or other technical assistants for the purpose of verifying reports and investigating the affairs of producers, including severance producers and dedicated reserve producers, to determine whether the tax is being properly reported and paid. He or they shall have the power to enter on the premises of any taxpayer liable for a tax under this Act and any other premises necessary in determining the correct tax liability, and to examine any books or records and to secure any information directly or indirectly concerned, according to law, and to promulgate rules pertinent to the enforcement of this Article which rules shall have the effect of law. Before any division or allotment of the tax collected hereunder is made, .5% of the gross amount of that tax shall be set aside in the State Treasury for the use of the Comptroller in the administration and enforcement of this Article; and so much of the said proceeds of .5% of the occupation tax paid monthly as may be needed in such administration and enforcement is hereby set aside for such purposes, subject to appropriation by the Legislature.

"(c) In the event that any taxpayer liable for a tax under this Act shall

-9-

not file a report, the Attorney General shall have the right to enjoin such person until the delinquent tax is paid or said reports are filed, and venue is hereby fixed in Travis County.

"(d) All persons having an obligation imposed by this Article shall be subject to a penalty of not less than $100 or more than $1,000 for violation hereof, each day's violation constituting a separate offense. The State shall have a prior lien for all delinquent taxes, penalties and interest on all property used by them or in their business of producing or purchasing gas, and if any of them shall fail to remit the proper taxes, penalties and/or interest due, the Comptroller may employ personnel to ascertain the correct amount due, and the person violating any of the provisions of this Article shall be liable, as additional penalty, for the reasonable expenses or the reasonable value of such services of representatives of the Comptroller, incurred in such investigation and audit. The Attorney General shall file suit in the name of the State of Texas for all delinquent taxes, penalties, and other amounts due for the enforcement of all liens under this Article.

"(e) The provisions of Article 3.09 of this Chapter shall also be applicable to the enforcement of the provisions of this Article, and where the terms 'producer' or 'purchaser' are used in that Article, they shall be construed to be broad enough to include 'severance producer' and 'dedicated reserve producer', as the case may be.

"(6) Allocation of Revenue.

"(a) The revenue derived under the provisions of this Article shall be allocated in the following manner:

"I.    .5% for administration and enforcement as hereinabove provided;

"II.   One-fourth of the net revenue shall be allocated to the Available School Fund;

"III.  The remaining three-fourths shall be deposited in the Omnibus Tax Clearance Fund and shall be set aside for the purpose of transfer and allocation from the Omnibus Tax Clearance Fund to the Medical Assistance Fund as provided by Section 2 of Article XX of Chapter 184, Acts, of the Forty-Seventh Legislature, Regular Session, 1941, as amended, it being specifically provided that no portion of the revenues deposited to the Omnibus Clearance Fund by virtue of this Act shall be distributed or allocated to any other fund under the provisions governing the Omnibus Clearance Fund unless the needs of the Medical Assistance Fund have been met fully.

"(b) 'Revenue derived under the provisions of this Act' as used in this section means such revenue as may be added by virtue of the provisions of this Article 3.11 to that revenue which would otherwise be obtained under other provisions of law.

"(7) In case two or more persons pay under protest challenging the constitutionality of any portion of this Article, the Attorney General shall, within thirty days after the filing of the second protest, institute a suit for

-11-

declaratory judgment in the District Court of Travis County, Texas. In order to expedite the decision in such case or cases, and also in suits filed by taxpayers under Article 7057b, Vernon's Revised Civil Statutes, any such cases involving the constitutionality of any portion of this Act shall be advanced to the top of the docket of any District or Appellate Court in which the cases might be filed or appealed."

Sec. 2. Repealer

All laws or parts of laws in conflict with this Act are hereby repealed to the extent of such conflict only. Specifically, Chapter 22, Title 122A, is hereby repealed.

Sec. 3. Severability Clause.

If any article, section, subsection, sentence, clause, or phrase of this Act is for any reason held to be invalid or unconstitutional such decision shall not affect the remaining portions or sections of this Act. The Legislature hereby declares that it would have passed such portions of this Act as may be held valid and constitutional independently of such section, subsection, sentence, clause, phrase or portion of this Act as may be held unconstitutional and invalid.

Sec. 4. Emergency Clause.

The reasons set forth in the declaration of policy and the fact that additional revenue is urgently needed to meet the budgetary requirements of the State, creates an emergency and an imperative public necessity that

the constitutional rule requiring bills to be read on three several days in each House be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.