# JANUARY, 1917.

---

### ARANSAS COUNTY ET AL. ·V. COLEMAN-FULTON PASTURE COMPANY ET AL.

#### No. 2821.   Decided January 21, 1917.

**1.—Road—Bridges.**

A bridge is, ordinarily, but the part of a road or highway that crosses a stream; and the word "road," when used in a statute, should be given this generic meaning, and include bridges, unless from the context it appears to be used in its specific sense.   (P. 219.)

**2.—Same—Statutory Construction—Clauses of Constitution.**

As a general rule of construction a word used with a plainly restricted meaning in one clause of a constitution, as where roads and bridges are dealt with as distinct subjects (Const., art. 3, sec. 56; art. 8, sec. 9; art. 11, sec. 2; and art. 16, sec. 24) should be given the same meaning when used in another section. But this is not a conclusive test.   The spirit, purpose and scope of article 3, section 52 of the Constitution (Amendment of 1903) are to be consulted in determining whether "roads" as there used include bridges as a necessary part thereof.   (Pp. 219-222.)

**3.—Constitution—Road—Improvement Bonds—Bridges.**

Where bonds have been voted by a county for the construction of a "road" in accordance with section 52 of article 3 of the Constitution, the road so authorized included bridges as a part thereof; the proceeds of the bond issue could be appropriated to building bridges constituting a necessary part of the road, and an injunction against the issuance and sale of bonds voted for such purpose was unwarranted.   (Pp. 222, 223.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Aransas County.

The Coleman-Fulton Pasture Company and others brought suit against the county and its officers to enjoin the issue and sale of bonds voted by the county for the construction of a causeway and bridge.   The injunction was refused by the district judge and plaintiffs appealed.   On the order refusing injunction being reversed and the case remanded with instructions that it issue, defendants obtained writ of error.

*E. A. Stevens, Dougherty & Dougherty, B. D. Tarlton, Jr.,* and *H. S. Bonham,* for plaintiffs in error.—The word "road" as used in our Constitution is flexible enough to include within its meaning the term "bridges."   Art. 3, sec. 52, Constitution of Texas, as amended 1903;

art. 6974, Rev. Stats., 1911; Jones v. Keith, 37 Texas, 399; Berlin
Iron Bridge Co. v. City of San Antonio, 50 S. W., 408; Dallas County
v. Plowman, 99 Texas, 513; Smith v. Grayson County, 18 Texas Civ.
App., 153, 44 S. W., 921; People v. Buffalo Co. Comm., 4 Neb., 150;
Brown v. Preston, 38 Conn., 219; State ex rel. Haisley v. Carbon County,
38 Utah, 563, 114 Pac., 522; Independent Highway Dist. No. 2 v. Ada
County (Idaho), 134 Pac., 542; Penn Tp. v. Perry County, 78 Pa. St.,
457; Pickens County v. Greene County, 171 Ala., 377, 54 So., 998;
Cascade County v. City of Great Falls, 18 Mont., 537, 46 Pac., 437;
Norfolk v. Podmore, 86 Atl., 582; Andrews v. Wekenman, 144 Mich.,
199, 107 N. W., 870; Chicago v. Powers, 89 Am. Dec., 418; Montgomery
Co. v. Clarksville & R. Turnpike Co., 109 S. W., 1153; People v. Hills-
dale, etc., 23 Wend. (N. Y.), 360; Prop. of Bridges v. Hoboken Land
Co., 13 N. J. Eq., 511; Everitt v. Bailey, 150 Pa. St., 152, 24 Atl., 700;
Elliott on Roads, vol. 1, sec. 32, p. 38; Dillon on Municipal Corp., vol. 2,
sec. 1157; Culbertson v. Abbeville Co., 70 S. C., 457, 50 S. E., 33;
Mahnken v. Board of Chosen Freeholders, 62 N. J. L., 404, 41 Atl., 928;
Willoughby on Constitutional Law, vol. 1, p. 25.

If the word "roads" is not flexible enough to be interpreted so as to
include the word bridges, then the express constitutional power authoriz-
ing special road districts to build gravelled, macadamized or paved roads,
carries by implication the power to build the bridges that are a neces-
sary essential thereof.   Constitution of Texas, art. 3, sec. 52; Rev. Stats.
of Texas, 1911, art. 5502, subd. 6; Knox v. Lee, 79 U. S., 457, 20 L. Ed.,
359; McCullough v. Maryland, 4 Wheat., 405; Cooley's Constitutional
Limitations, 5 ed., p. 77; Elliot on Roads and Streets, 3 ed., vol. 1, p. 10,
sec. 7 and sec. 32, p. 38; United States v. Denver, etc., R. R. Co., 150
U. S., 14, 37 L. Ed., 975; Winona & St. Peter Ry. Co. v. Barney, 113
U. S., 625, 28 L. Ed., 1109; Imperial Irr. Co. v. Jayne, 104 Texas, 395,
138 S. W., 581; Dallas County v. Plowman, 99 Texas, 513; 36 Cyc.,
1172; Ayres v. Gulf, C. & S. F. Ry. Co., 39 Texas Civ. App., 561, 88
S. W., 437; Railway Co. v. Bowman, 97 Texas, 417; Babcock v. Western
Ry. Co., 9 Metc. (Mass.), 533; Black on Interpretation of Laws, p. 316,
sec. 119; Cooley on Constitution, sec. 430; Endlich Interp. Statute, sec.
535; Gilbert v. Graddock, 72 Pac., 869; United States v. Babbit, 95
U. S., 334; Callaghan v. McGowen, 90 S. W., 319; Terrell v. Sparks,
104 Texas, 191, 135 S. W., 521.

*Templeton, Brooks, Napier & Ogden* and *Proctor, Vandenberge, Crain
& Mitchell,* for defendants in error.—Words are presumed to have been
carefully selected.   Brady v. Brooks, 99 Texas, 366.

Legislatures are presumed to have been familiar with conditions as
they existed.   Irrig. Co. v. Jane, 104 Texas, 395.

It is to be presumed that when the Legislature intend to change the
rule of construction it will do so by express words.   Snidor v. Chambers,
Dallam, 605.

Provisos are to be strictly construed.   Potter v. Robinson, 102 Texas,
448; State v. Brady, 102 Texas, 408.

Words of an article of a statute or of a Constitution will be·presumed to be used in the same sense which they must needs bear in another article upon an allied subject.    Cooper v. Yoakum, 91 Texas, 391; Pierson v. West, 97 Texas, 243.

Words are presumed to be used in the same sense throughout an instrument or an article of the Constitution or a statute.    Bates v. Bratton, 96 Texas, 284; Raymond v. Cleveland, 42 Ohio St., 529; James v. DuBois, 16 N. J. L., 293; Pitts v. Shipley, 46 Cal., 161.

Mr. Chief Justice PHILLIPS delivered the opinion of the court.

By the amendment of 1903 authority is given by section 52 of article 3 of the Constitution to any county, any political subdivision of a county, any number of adjoining counties, etc., acting under legislative provision, upon a vote of a two-thirds majority of the duly qualified resident property taxpayers of the district or territory to be affected thereby, in addition to all other debts, to issue bonds in any amount not in excess of one-fourth of the assessed valuation of the real property of such district or territory, for, among other purposes, the following:

"The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

The question in this case is that of the right of Aransas County, under this provision of the Constitution and pursuant to an Act of the Legislature, to devote an issue of its bonds, $300,000 in amount, and duly voted by the taxpayers of the county, to the building of a roadway consisting in part of a bridge structure across Aransas Bay between Lamar Peninsula and Live Oak Peninsula in that county, so as to connect the public road system of the county lying north of Copano Bay with that on Live Oak Peninsula.

Aransas County is a coast county indented by bays.    The mainland on the south is constituted by Live Oak Peninsula, where the county seat, Rockport, is situated.    It extends in a northerly·direction between Aransas Bay on the east and Copano Bay on the west to the channel between the two bays at its northern end, separating it from Lamar Peninsula, the mainland on the north.    This channel varies in depth from three to thirteen feet.    The causeway, or roadway, for the building of which it was proposed to use the bond issue, will be, according to the plans, about 13,000 feet long.    Its middle part will span the channel between the two mainland portions of the county and will consist of a reinforced concrete bridge, 3033 feet in length, with a draw span in the center, and having thereon a roadway twenty feet in width to be paved with wooden blocks.    For its remaining length, or about 10,000 feet, the causeway will consist of roads connecting with each end of the bridge, fifty feet in width and paved with shell.

An injunction was sought by the defendants in error to restrain the issuance and sale of the bonds for this contemplated purpose authorized by the legislative Act.    It was denied by the district judge.    On appeal, this order was reversed by the honorable Court of Civil Appeals for the

Fourth District and the case remanded with the direction that the injunction issue.   180 S. W., 312.

The holding of the Court of Civil Appeals was, in substance, that while a causeway is to be regarded as a part of a road within the meaning of the Constitution, the proposed causeway is, to the extent of 3033 feet, a bridge, the construction of which is not specifically designated in section 52 of article 3 as one of the purposes embraced in the section, and, hence, the proposed bonds were voted for an illegal purpose.   Concretely, therefore, the question for decision is the sense in which the term "roads" is used in section 52 of article 3 of the Constitution.

A bridge is ordinarily but the part of a road or highway that traverses a stream.   There is, accordingly, ample authority for the proposition that when the term "roads" is used in statutes, unless from the context it appears to have been used in its specific sense, its generic meaning should be given it, which includes "bridges."   City of Chicago v. Powers, 42 Ill., 169, 89 Am. Dec., 418; Follmer v. Nuckolls County, 6 Neb., 204; Isaacs v. Wiley & Elkins, 12 Vt., 674; Montgomery County v. Clarksville, etc., Co., 120 Tenn., 76, 109 S. W., 1153; Andrews v. Wekerman, 144 Mich., 199, 107 N. W., 870, 25 Am. & Eng. Ency. of Law (2d ed.), 985, notes.

This rule is well illustrated by the case of Berlin Iron Bridge Co. v. City of San Antonio, 50 S. W., 408, also decided by the honorable Court of Civil Appeals for the Fourth District.   There the charter of the city of San Antonio authorized the issuance of its bonds for "street improvements," without any express mention of bridges.   The bridge company, under a contract with the city, erected a bridge across the San Antonio River where it was crossed by one of the city streets.   With respect to the right of the bridge company to have the proceeds of the city's bonds issued for "street improvements" and in its hands at the making of the contract treated as a fund for the satisfaction of the contract, it was held that the bridge was a "street improvement," for the payment of which according to the contract the bond fund might appropriately be used.

In different provisions of the Constitution, namely, section 56 of article 3, section 9 of article 8, section 2 of article 11, and section 24 of article 16, roads and bridges are dealt with as distinct subjects.   In section 9 of article 8 the construction of each is recognized as a distinct purpose of taxation.   Inasmuch as the term "roads" is very plainly used in these sections in a specific sense, it is urged by the defendants in error that the same restricted meaning should be given it in the construction of section 52 of article 3.   Such was the view of the Court of Civil Appeals.   There is force in the position as a general rule of construction.   But the sense in which a term is used in other provisions of a constitution is not a conclusive test of its meaning in a particular provision.   The spirit, purpose and scope of the

particular provision are all to be consulted in the effort to determine with certainty the meaning of its terms.

The amendment of 1903 to section 52 of article 3, which includes the subdivision quoted at the beginning of this opinion, was adopted at a later time than any of the provisions above referred to. Upon the general subject of road improvement, it marked a radical departure from the previous policy of the State. It was the response to a public demand that provision be made whereby the State, and every section of the State, might be supplied through voluntary taxation with adequate, durable and permanent roadways. The former bounds of taxation for their construction and maintenance were set aside, and the political subdivisions named, in addition to all other debts, were, under legislative provision, given authority upon a requisite vote to issue bonds in the liberal amount of one-fourth of the assessed valuation of the real property of such districts. Not only was such authority given to counties and subdivisions of a county, but any number of adjoining counties were empowered to form themselves into a taxing district as a means of securing the improvement in the territory comprised by them. Different units for the necessary taxation, and, therefore, different units as the beneficiaries of the taxation, from those theretofore existing, were thus authorized. It was plainly designed that the extent of the improvement should not be limited alone to the necessities of a county, nor was it to be longer dependent alone upon the powers of a county. The purpose of the amendment was a broad one, its scope was large, its spirit liberal.

Furthermore, it was to prove of use to every section of the State, no less to those parts where the building of roads might be attended by the crossing of swamp lands and marsh lands, or other natural obstacles, than to those whose topography is more favorable; no less to the coast counties with their shallow channels and indented inlets and bays to be reckoned with in the procurement of convenient and enduring highways of travel, than to those of the prairie region and black land belt whose elevation and surface afford no such difficulties and present no such problems.

In a word, the purpose of this amendment plainly was to provide the means of building and maintaining not alone neighborhood, precinct or even county roads, but adequate road systems throughout the entire State, to be availed of by larger or smaller areas as might be desired, so as to afford through the exercise of a liberal taxing power widely distributed, adequate and continuous highways through every section of the State. Such a purpose stands out, boldly, we think, in the broad and sweeping provisions of the amendment.

With this true, is it consonant with such a purpose to give the term "roads" as used in the section a narrow construction, confining its meaning to merely that part of a highway which traverses a ground surface, and excluding any part which might, for illustration, cross ten feet of shallow water? If, for instance, in the building of a road authorized

by this section through a given district it is necessary to cross a stretch of marsh land subject at different seasons to be more or less covered with water, requiring for the permanence of the road that it be laid upon a species of trestle for that distance, is it to be believed that the framers of the section intended the term "roads" should have a meaning which would permit the highway to be built to the marshy area and beyond it, but not across it, thereby possibly rendering the road useless to the district to be served by it? Under such a construction the constitutional provision would be valueless to certain sections of the State, whereas it must have been intended to yield its beneficial result to every section. In such sections it would be impossible to build a road for any considerable distance upon entirely a ground surface. Low lands and swamp lands intervene, requiring, for an enduring roadway, that for certain distances it be laid upon some kind of an elevated structure. Looking to the purposes of the provision, can it be considered that a meaning for the term "roads" was intended which would in large measure defeat its operation as applied to such sections of the State?

The constitutional provision in force prior to the adoption of the amendment to section 52 of article 3 confined to the counties of the State the power of creating indebtedness for the construction of county bridges and roads. The amendment to section 52, article 3, however, shows it was contemplated that under legislative provision road districts, other than counties, might be formed, which, as defined political subdivisions of the State, should in their own right exercise this power for the construction and maintenance of roads in their territory. This is revealed in the authorization for the formation of any number of adjoining counties into a district under legislative provision. Such a district, it was clearly intended, should constitute a corporate entity, invested with an individual authority for this purpose, to be exercised with regard to the needs of the district as distinct from the needs of a county. With this enlarged taxing power at the disposal of such a district and to be exerted with regard to the necessities of the entire district, is it to be supposed that with respect to bridges which might be essential parts of any practical system of roads constructed in the territory, it was yet the purpose of this constitutional provision to limit the district to the necessities of a county and likewise leave it dependent upon the restricted taxing power of a county? Was it intended, as applied to such a district, that a dual authority should exist with respect to the construction of these essential parts of any adequate system of roads, the district providing for the construction of the surface roadways, and the counties within the district the bridges necessary to them, with the risk of the entire improvement being defeated or rendered useless if the counties, through either unwillingness or want of power, should fail to provide the necessary bridges as parts of the roads? With this amendment contemplating the exercise of a larger power, over a more extended area, with respect to road improvements than that theretofore confided to the counties alone, in seeking the meaning of

the term "roads" as used in the amendment it seems to us more reasonable to suppose that the purpose was to make possible the full exertion of the power in relation to every essential feature of the general subject. That subject,—the purpose prompting the amendment, was a general and vigorous improvement of the road facilities of the State. If it had been intended that this important work should, as theretofore, be entrusted to the counties alone, there would be good reason for believing that the same limitations with respect to the meaning of terms should govern as had been imposed by former provisions of the Constitution upon their exercise of the power. But this reasoning fails when it is seen that the amendment contemplated the exercise not only of a far larger power, and, therefore, in a certain sense, a different power, in respect to taxation for the general purpose than had before been committed to the counties of the State, but its exercise in certain instances by bodies other than counties and for a territory much greater in extent than that of any county. The term "roads," in our opinion, was not used in any such narrow sense in this connection as would prevent in the construction of necessary roads the necessary bridges for such roads. The broad scope of the constitutional provision when considered in the light of its purpose compels the view that the term was used in the amendment in such a sense as would make possible completed and continuous roads in fulfillment of the liberal policy to which the provision is due. Section 52 of article 3, as amended, in our opinion, means that the political subdivisions therein named and authorized may, pursuant to legislative provision and by means of the bond issues therein authorized, construct and maintain in their territory roads of the kinds designated, and where necessary as a part of such construction may, as a part of the road, erect proper structures for the road over such streams, swamps or marshes as it may cross. We do not hold that under this constitutional provision moneys thereby voted may be applied to the construction of bridges exclusively, not to be erected as a necessary part of the construction of a road, but as an independent or exclusive undertaking.

The improvement involved in the present case was to the extent of nearly two miles clearly a surface roadway. Its purpose, it appears, was to connect the public road systems of the county. In its general character it was a roadway. It did not lose that character because in its middle part for 3000 feet it spanned a channel of water. It is to be assumed that it was considered by the people of the county as a necessary link in the county's system of roads and that the bonds were voted with reference to its construction for that purpose. The Constitution does not require the construction of roadways of particular lengths or at particular places. These matters are left as a part of the question in the election to determine whether the voluntary tax shall be imposed and the debt created. So much of the roadway as constituted a bridge structure for the spanning of the channel was, it clearly appears, a necessary part of the roadway. Under section 52, article 3, as amended,

the county had the right to apply the bond issue to the construction of the roadway, and in our opinion had equally the right to use the issue for the construction of that part of the roadway which spanned the channel.

The judgment of the Court of Civil Appeals is reversed and the order of the district judge refusing the injunction is affirmed.

*Reversed and judgment of District Court affirmed.*