CANADIAN RIVER GAS COMPANY V. MARY E. BIVINS ET AL.

No. 7657. Decided June 11, 1941.
Rehearing overruled July 16, 1941.
(153 S. W., 2d Series, 432.)

348

*Adkins, Pipkin, Madden & Keffer* and *Wm. L. Darrah,* all of Amarillo, for appellants.

The act of Legislature authorizing the tax in question required a deduction to be made from payments otherwise due the royalty owners, in this case the plaintiffs, for their proportion of the gross production or severance tax levied and assessed by said act of Legislature and the defendants were clearly within their rights by deducting the amount in controversy from the royalties payment otherwise due the plaintiffs, and the trial court erred in not so holding. Sheffield v. Hogg, 124 Texas 290, 77 S. W. (2d) 1021; Hager v. Stakes, 116 Texas 453, 294 S. W. 835.

*Underwood, Johnson, Dooley & Wilson,* of Amarillo, for appellees.

The gas production tax founded on Article 7074b, as amended, is levied solely against the producer of gas, and is not levied in any part against a royalty owner, such as plaintiff, holding only a fixed monetary royalty. Reynolds v. McMann Oil & Gas Co., 14 S. W. (2d) 819; 40 Tex. Jur. 69.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This case is before us on two certified questions from the Court of Civil Appeals for the Seventh District at Amarillo. The certificate is as follows:

"In this case the appellees instituted this suit in the County Court of Potter County, Texas, to recover from appellant $394.69, with interest.

"The admitted facts are that on July 18, 1923, Lee Bivins as lessor executed and delivered to the Producers and Refiners Corporation an oil and gas lease covering certain lands, fully described, situated in Hutchinson, Carson, Potter and Moore Counties, in Texas, for the sole and only purpose of developing oil and gas, building the necessary pipe lines, tanks, power stations, etc.

"The appellees are now the owners of the royalty interest in the land described in the lease. The appellant is the owner of the gas rights granted by the lease and is obligated to pay to appellees 1c per thousand cubic feet for the gas produced and sold on the premises.

"During the thirteen months beginning November 1, 1936, and ending November 30, 1937, the appellant produced from the land, 1,534,240,000 cubic feet of gas on which the lease contract stipulates the lessor was to be paid 1c per thousand cubic feet, or a total of $15,342.40, but in fact the appellant paid appellees but $14,957.71 and failed and refused to pay the balance of $394.69, the amount sued for in this case by appellees.

"The trial court on these agreed facts rendered judgment against appellant and in favor of appellees for the amount agreed upon, $394.69, together with interest at the rate of 6% per annum from January 1, 1938, until paid, from which judgment appellant prosecuted an appeal to this court.

"The appellant refused to pay appellees the $394.69 because

it says that Article 7047b of the Revised Civil Statutes and the amendments thereto levy an occupation tax on the entire production of producers of natural gas and makes all interested holders, including royalty holders liable for their proportionate part of the tax and inasmuch as appellees were royalty owners appellant was authorized and required under the law to deduct from payments otherwise due the appellees the pro rata part of the tax due by them to the State as royalty owners, and this it did.

"In view of the legal problem presented, we deem it advisable to certify to your Honorable Court the following questions:

"First: Does article 7047b, with the amendments thereto, which levy an occupation 'tax on producers of natural gas,' require royalty owners as interested parties to pay a proportionate part of the tax?

"Second: If the preceding question is answered in the affirmative, does the lease contract in this case protect the royalty owners—the appellees—from the payment of their proportionate part of the tax?"

### OPINION.

A reading of the above certificate will demonstrate that Mary E. Bivins et al occupy the status of gas royalty owners, and that at the time here involved such status had been created by an oil and gas lease contract executed by Lee Bivins to Producers and Refiners Corporation. A reading of the first question certified will disclose that it calls on this Court to decide whether or not, under pertinent statutes, ordinary gas royalty owners are required to bear their proportionate part of the tax levied by such statutes on producers of natural gas. Before proceeding to decide that question we deem it advisable to quote the applicable statute. It is carried as a part of Article 7047b, Vernon's Texas Civil Statutes. See Acts 1936, 44th Leg., 3d C. S., p. 2079, ch. 495. The Act begins at page 2040. It amends Acts 1931, 42d Leg., p. 111, ch. 73.

Omitting parts nor pertinent, the statute in question reads as follows:

"Sec. 1 (a) That from and after the date herein fixed every

person engaging * * * in the business of producing and saving in paying quantities, for sale or profit, any natural gas, * * *

\* \* \* \* \*

"(c) Are hereby declared to be 'producers' and engaged in the business of producing natural gas * * *.

"Sec. 2. The term 'producer,' 'produced,' and 'producing' as defined herein shall include every person producing natural gas upon which a tax accrues hereunder, * * .*.

"Sec. 3. A tax shall be paid by each such producer on the amount of gas produced and saved within this State * * * upon the following basis:

"A tax equivalent to three per cent (3%) of the market value of the total amount of gas produced and saved * * *.

"The tax hereby levied shall be a liability of the producer of gas and it shall be the duty of such producer to keep accurate records of all gas produced, making monthly reports under oath as hereinafter provided.

"The purchaser of gas shall pay the tax on all gas purchased and deduct tax so paid from payment due producer or other interest holder, making such payments so deducted to the Comptroller of Public Accounts by legal tender or cashier's check payable to the State Treasury."

A reading of the above statute will disclose that it contains several provisions, among which are the following:

1. It declares that every person engaging in the business of producing and saving in paying quantities for sale or for profit any natural gas are producers, and are engaged in the business of producing natural gas.

2. It defines the term "producer," "produced," and "producing" as including every person producing natural gas upon which a tax accrues "hereunder."

3. It requires each producer of natural gas to pay a tax equivalent to 3 per cent. of the market value of the total amount of gas produced and saved.

4. It makes the tax of 3 per cent. of the market value of the total amount of gas produced and saved a liability of the producer of such gas.

5. It requires the producer to keep accurate records of all gas produced and make monthly reports.

6. It requires the purchaser of gas to pay the tax on all gas purchased by him.

7. It provides that the purchaser who has paid the tax on gas purchased by him has the right to deduct the amount of such tax so paid "from payment due producer or other interest holder."

1, 2 A reading of the above-quoted statute will disclose that in one place it is provided that the tax shall be paid by the producer, and in another place it is provided that it shall be paid by the purchaser. It is clear that the tax is not levied against the purchaser, because he is given the right to recoup himself against "the producer or other interest holder." It appears that the purchaser is merely made the agent or instrument of the State to collect the tax. Beyond a doubt the purchaser who has paid the tax may recoup himself from a person other than a producer. This is plainly stated in the statute. The other person is an "interest holder." To our minds the statute does not, and could not, allow a recoupment from a person not liable for the tax. It follows that when the statute is read and considered as a whole it makes the producer of natural gas, together with any "other interest holder" therein, ultimately liable for the tax. It is settled that a gas royalty reserved in a gas lease contract is an interest in the land. It is also settled that the principal purpose of a gas lease contract is the production of gas for the mutual benefit of both the lessor and the lessee. The consideration moving to the lessor is an interest in the gas, or its money value. Thus the lessor who retains a gas royalty interest has a very vital interest in the gas production and the sale thereof. Under such a state of facts the gas royalty holder is an "interest holder" within the meaning of this statute. Group No. 1 Oil Corporation v. Sheppard (Civ. App., writ refused), 89 S. W. (2d) 1021. The lessor and the lessee are both vitally interested in this gas lease contract and in the production of gas thereunder. As a matter of fact, this is true as applied to most gas lease contracts. It is true that under this lease contract, as under most lease contracts, operations are prosecuted by the lessee, and he is to be regarded as the producer; nevertheless such operations are prosecuted by virtue of the lease contract for the benefit of both the lessor and the lessee. It must follow that both parties are interest holders

in the thing produced,—the gas. Barwise v. Sheppard, 299 U. S. 33, 81 L. Ed., 23, 57 Sup. Ct. 70. From all that we have said it is evident that we hold that a gas royalty holder is an "interest holder" within the meaning of the above-quoted statute.

The lease here involved is, generally speaking, an ordinary lease contract, wherein the lessor has granted, demised, leased, and let to the lessee the land here involved, "for the sole and only purpose of mining and operating for oil and gas * *." The oil royalty reserved is one-eighth of the oil produced and saved. The gas royalty is "one cent per thousand cubic feet for gas sold for the gas from each well where gas only is found while the same is being used off the premises. * *." We find nothing in the lease contract that would require the lessee, or anyone else, to protect the gas royalty owners from the payment of their proportionate part of this gas tax.

We answer the first question "yes." We answer the second question "no."

Opinion delivered June 11, 1941.

Rehearing overruled July 16, 1941.