Robert S. CALVERT, Comptroller of Public Accounts of the State of Texas, et al., Appellants,

v.

TRANSCONTINENTAL GAS PIPELINE CORPORATION et al., Appellees.

No. 10831.

Court of Civil Appeals of Texas.

Austin.

Dec. 14, 1960.

Rehearing Denied Jan. 4, 1961.

Will Wilson, Atty. Gen., C. K. Richards, Jack N. Price, Asst. Attys. Gen., for appellants.

R. Dean Moorhead, Austin, Fulbright, Crooker, Freeman, Bates & Jaworski, Austin C. Wilson, Richard L. McGraw, Houston, Clark, Mathews, Thomas, Harris & Denius, Austin, for appellee Transcontinental Gas Pipe Line Corp.

R. Dean Moorhead, Austin, Paul S. Davis, Detroit, Mich., Arthur R. Seder, Jr., Chicago, Ill., for appellee Michigan-Wisconsin Pipe Line Co.

Lawrence I. Shaw, Ralph P. Blodgett, Omaha, Neb., R. Dean Moorhead, Austin, for appellee Northern Natural Gas Co.

R. Dean Moorhead, Austin, Head & Lyle, Corpus Christi, for appellee Panhandle Eastern Pipeline Co.

Ross, McGowan & O'Keefe, William W. Brackett, Charles C. McDugald, Chicago, Ill., for appellee Natural Gas Pipeline Co. of America.

Lawrence I. Shaw, Ralph P. Blodgett, Omaha, Neb., R. Dean Moorhead, Austin, for appellee Permian Basin Pipeline Co.

HUGHES, Justice.

Transcontinental Gas Pipeline Corporation, Natural Gas Pipeline Company of America, Northern Natural Gas Company, Permian Basin Pipeline Company, Panhandle Eastern Pipeline Company and Michigan-Wisconsin Pipeline Company sued Robert S. Calvert, Will Wilson and Jesse James, Comptroller of Public Accountants, Attorney General, and Treasurer, respectively, of the State of Texas, to recover taxes paid, under proper protest, pursuant to the requirements of Chapter 22, Title 122-A, Arts. 22.01 to 22.09, inclusive, V.A.T.S. Tax.-Gen. These statutes were enacted in 1959, 56th Leg., 3rd C.S. p. 187, ch. 1, and are designated

Severance Beneficiary Tax. The material provisions of these statutes, sometimes referred to herein as the Act, are set out below.[1]

**1.** Art. 22.01 Levy of tax; rate and calculation; payment

"(1) In addition to the occupation tax on producers of natural gas levied by Chapter 3 of this Act, there is hereby levied an occupation tax on the occupation or privilege of obtaining the production of Dedicated Gas within this State, and on the business or occupation of producing such gas, to be known as the 'Severance Beneficiary Tax,' and to be computed as follows:

\*    \*    \*    \*    \*

"(2) The market value of gas subject to the tax hereby levied shall be the value thereof at the mouth of the well except in cases where liquid hydrocarbons are extracted or recovered therefrom in this State, in which event the market value shall be the value of the residue gas remaining after such extraction or removal, and no additional tax on liquid hydrocarbons extracted or recovered from gas is levied by this Chapter.

"(3) The tax hereby levied is an occupation tax on the occupation or privilege of obtaining the production of 'Dedicated Gas' and on the business or occupation of producing such gas as a 'Severance Beneficiary,' as these terms are defined herein.

"(4) The tax hereby levied shall be a liability of the producer of gas, but if produced for or sold to a severance beneficiary other than the producer, the tax shall be the liability of and paid by the severance beneficiary. It is the intention of this Article that the producer shall be required to pay the tax hereby levied only if the gas is produced for his own use or independent sale and not under any prior contract to produce for sale to another. The provisions in this paragraph shall not be severable and producers shall not be liable for any tax under the provisions of this Article unless severance beneficiaries other than producers are also liable as provided under the terms hereof. If the tax hereby levied is held invalid as to any class of severance beneficiaries, other than governmental entities or organizations held to be exempt from taxation, then it shall not be valid as to other severance beneficiaries or producers, and the non-severability provisions of this Article shall prevail over the general severability clause in Section 5 of this Act. It shall be the duty of each producer to keep accurate records in Texas of all gas produced and to make monthly reports under oath as hereinafter provided.

"(5) The first purchaser of gas shall pay the tax on gas purchased, and if he is not the severance beneficiary, shall collect the tax so paid from the severance beneficiary, making such payments so collected to the Comptroller of Public Accounts by legal tender or cashier's check payable to the State Treasurer. Such moneys so collected for the payment of this tax shall be held by the purchaser in trust for the use and benefit of the State of Texas and shall not be commingled with any other funds held by such said purchaser, and shall be remitted to the State Treasurer in accordance with the terms and provisions of this Chapter; and it shall be the duty of each such purchaser to keep accurate records in Texas of all such gas purchased or obtained as hereinafter provided and to make and deliver to the Comptroller verified monthly reports thereof. If there is no first purchaser or severance beneficiary other than the producer, then the producer shall pay to the Comptroller the tax levied by this Chapter.

"(6) The tax herein levied shall be due and payable at the office of the Comptroller at Austin on the last day of the calendar month, based on the amount of gas produced and saved during the preceding calendar month, and on or before said date each producer and severance beneficiary and first purchaser shall make and deliver to the Comptroller a verified report on forms prescribed by the Comptroller showing the gross amount of gas produced and purchased, less the exclusions and at the pressure base set out herein, upon which the tax herein levied accrues, together with details as to amounts of gas, from what leases said gas was produced, and the correct name and address of the severance beneficiary, and first purchaser and such other information as the Comptroller may desire, such report to be accompanied by legal tender or cashier's check payable to the State Treasurer for the proper amount of taxes herein levied."

Art. 22.02 Definitions

"(1) For the purpose of this Chapter, 'Producer' shall mean any person (other than a non-operating royalty owner) owning, controlling, managing, or leasing any gas well or land producing gas, and any person who produces in any

In a nonjury trial, judgment was rendered for recovery .of taxes sued for, the Trial Court holding that the taxing statutes were unconstitutional and void, being

manner any gas by taking it from the earth or waters in this State.

"(2) 'First Purchaser' shall mean any person purchasing gas from the producer.

"(3) 'Dedicated Gas' shall include all gas withdrawn from the lands or waters of this State for the use and benefit of a severance beneficiary.

"(4) 'Severance Beneficiary' shall mean any person for whose use and benefit gas is withdrawn from the land or waters of this State. Where a contract in writing confers upon one person the prior right to take title to gas produced from particular lands, leases or reservoirs in this State and other persons are obligated to maintain and operate wells, gathering or dehydration facilities or to process or treat such gas so as to make delivery thereof as required by such contract, it shall be conclusively presumed (i) that by such contract gas in place under lands or leases or within such reservoirs has been pledged, dedicated and set apart to satisfy such contract and (ii) that any gas which is delivered and accepted under such contract has been withdrawn from the lands and waters of this State for the use and benefit of the person taking title to such gas by virtue of such contract. If there be more than one such contract covering the same gas, the tax hereby levied shall be the liability of the person who ultimately takes title to the gas in this State by virtue of such contracts. In all other instances, it shall be conclusively presumed that gas when withdrawn from the lands and waters of this State is withdrawn for the use and benefit of the person taking it from the land or waters in this State and having the original possessory right thereto as and when the same is produced.

"(5) 'Gas' shall mean natural and casinghead gas or other gas taken from the earth or waters, regardless of whether produced from a gas well or from a well also productive of oil, distillate, and/or condensate, or other products.

"(6) The term 'Casinghead Gas' shall mean any gas and/or vapor indigenous to an oil stratum and produced from such stratum with oil."

Art. 22.03    Erroneous payment; failure to pay tax

" * * *    (2) The failure of a first purchaser or a severance beneficiary to pay the tax levied by this Chapter shall not relieve any subsequent purchaser from the payment of same, and it shall be the duty of every person purchasing gas produced in Texas to satisfy himself or itself that the tax on said gas has been or will be paid by the person primarily liable therefor."

Art. 22.05    Suits against delinquents for injunction

"In the event any severance beneficiary or first purchaser of gas in this State shall become delinquent in the payment of the proper taxes herein imposed, or fails to file required reports with the Comptroller, the Attorney General by a suit in the name of the State of Texas shall have the right to enjoin such persons from producing, purchasing, delivering or taking delivery of gas until the delinquent tax is paid or said reports filed, and the venue of any such suit for injunction is hereby fixed in Travis County."

Art. 22.06    Penalties; lien of state

"Severance beneficiaries, first purchasers and producers shall be subject to a penalty of not less than One Hundred Dollars ($100) nor more than One Thousand Dollars ($1,000) for failure or omission to keep the records required herein or for the violation of any of the other provisions hereof, and each day's violation shall constitute a separate offense. The State shall have a prior lien for all delinquent taxes, penalties and interest on all property and equipment used by a severance beneficiary or first purchaser of gas in his business of producing gas or purchasing gas, and if any severance beneficiary or first purchaser of gas shall fail to remit the proper taxes, penalties, and interest due, or any of them, the Comptroller may employ auditors or other persons to ascertain the correct amount due, and the severance beneficiary and first purchaser of gas shall be liable, as additional penalty, for the reasonable expenses or the reasonable value of such services of representatives of the Comptroller incurred in such investigation and audit; * * *"

Art. 22.07    Evidence in suit by states; reports; transfer or lease

"(1) If any severance beneficiary or first purchaser of gas fails or refuses to pay any tax, penalty, or interest within the time and manner provided by this Chapter and it becomes necessary to bring suit * * *

"(3) On notice from the State Comptroller, it shall be unlawful for any person to produce or remove any gas from

in violation of the Commerce Clause of the United States Constitution.[2] We quote from its judgment:

"(a) That Chapter 22 (Articles 22.-01–22.09, inclusive) of Title 122A, * * * as such Chapter 22 is interpreted by defendants or as in any manner interpreted, is invalid as to gas purchased, received and transported in Texas by plaintiffs, and each of them, for interstate transmission, in that the same is contrary to Clause 3 of Section 8 of Article I (the Commerce Clause) of the Constitution of the United States.

"(b) That, pursuant to the provisions of Article 22.09 of said Chapter 22 that 'if this Chapter is declared invalid by a final judgment of a court of competent jurisdiction as to any severance beneficiary, it shall be invalid from the beginning as to the producer and all other severance beneficiaries,' and to the provision of Article 22.01(4) of Chapter 22 that 'if the tax hereby levied is held invalid as to any class of severance beneficiaries, other than governmental entities or organizations held to be exempt from taxation, then it shall not be valid as to other sever-

ance beneficiaries or producers,' Chapter 22 and the tax levied therein are invalid as to all 'producers' and 'severance beneficiaries,' as said terms are defined in said Chapter.

"That the relief granted in Paragraph I above makes unnecessary any adjudication of the other grounds of unconstitutionality or other invalidity asserted against Chapter 22 by plaintiffs."

We agree with this judgment, and will confine ourselves to the limits prescribed by it.

In order to understand the point of our decision, reference must be made to the construction appellants place on these statutes and their commendably frank concessions in this regard.

Basically, their overall interpretation of these statutes is that the tax is levied upon the incident of production or severance of gas in place in Texas, and that those persons who exercise the privilege of obtaining the production of dedicated gas pursuant to dedication contracts with producers have a sufficient interest in the production of such gas as to justify the imposition of the tax upon them.[3]

---

any lease in this State whenever the severance beneficiary, first purchaser or producer has failed to file reports as required under the provisions of this Chapter."

Art. 22.08 Nonliability of producer

"The tax hereinabove imposed shall never be the liability or the obligation of the producer, except in those cases where the producer is the severance beneficiary as herein defined."

Art. 22.09 Nonseverability clause

"The provisions of this Chapter are hereby declared to be nonseverable; and if this Chapter is declared invalid by a final judgment of a court of competent jurisdiction as to any severance beneficiary, it shall be invalid from the beginning as to the producer and all other severance beneficiaries. The provisions of this Article shall prevail over the provisions of the general severability clause in Section 5 of this Act as to this Chapter."

2. Section 8 of Article I of the Federal Constitution provides that Congress shall have the power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Cl. 3.

3. A tax on production is valid even though the product manufactured or produced is destined for immediate interstate transportation. Utah Power and Light Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L. Ed. 1038.

To sustain their contention that "severance beneficiaries" have sufficient interest in the production of gas to justify the tax, appellants rely upon Barwise v. Sheppard, 299 U.S. 33, 57 S.Ct. 70, 81 L.Ed. 23, Canadian River Gas Co. v. Bivins, 137 Tex. 347, 153 S.W.2d 432, to the effect in the oil and gas royalty owners have such an interest in the oil and gas produced to justify their liability for a production tax.

In the disposition we make of this case, it is not necessary that we determine the incidence of the tax, i. e. whether it is the production or severance of the gas from dedicated lands as appellants contend.

Nor is it necessary that we determine that all of the "severance beneficiaries" defined by the statutes have an insufficient interest in the gas produced to justify imposition of the tax upon them in order to invalidate the tax. It is enough for this purpose that any such severance beneficiary lacks this interest. Art. 22.09, infra, footnote 1.

This brings us to the concession made by appellants. They say, and must say in order to sustain their position that all severance beneficiaries have a taxable interest in the gas produced, that the contract referred to in Art. 22.02(4) means a contract with the producer and cannot refer to a contract with a person other than the producer. We quote from their brief:

"The Act states, in effect, that the contract must confer upon 'one person' (the severance beneficiary) the prior right to take title to gas produced from particular lands, leases or reservoirs in Texas. * * * A person who has a prior right to take title to gas that is set apart, pledged and dedicated in place has the paramount and exclusive right to take title to the gas when it is produced under the dedication contract. Obviously, the only person who can confer this 'prior right' is the person having such right to convey, who must be the gas lessee, or producer. Therefore, it is apparent that producers are the 'other persons' referred to in Article 22.02(4), and that they, being the only persons who could possibly be 'obligated' by the type of contract described, are the second parties to such contracts. * * * it may be conceded that persons 'taking title' from persons operating processing or treating plants who have no direct contractual relationship with the producers do not

have an 'immediate and direct' interest in production as comprehended by the authorities discussed, infra. Therefore, under appellees' interpretation as applied to interstate transportation of gas, the actual operating incidence of the tax would not be the production but would be the 'taking' of gas into interstate commerce after production and processing."

It is our opinion that the plain wording of Sec. (4), Art. 22.02 is subject to no other construction than that it authorizes and fixes liability for the tax imposed by the Act upon downstream purchasers of gas under successive contracts, relating to the same gas, of the nature specified by the Act. For convenience we recopy such Sec. (4):

"(4) 'Severance Beneficiary' shall mean any person for whose use and benefit gas is withdrawn from the land or waters of this State. Where a contract in writing confers upon one person the prior right to take title to gas produced from particular lands, leases or reservoirs in this State and other persons are obligated to maintain and operate wells, gathering or dehydration facilities or to process or treat such gas so as to make delivery thereof as required by such contract, it shall be conclusively presumed (i) that by such contract gas in place under lands or leases or within such reservoirs has been pledged, dedicated and set apart to satisfy such contract and (ii) that any gas which is delivered and accepted under such contract has been withdrawn from the lands and waters of this State for the use and benefit of the person taking title to such gas by virtue of such contract. If there be more than one such contract covering the same gas, the tax hereby levied shall be the liability of the person who ultimately takes title to the gas in this State by virtue of such contracts. In ıll other instances, it shall be conclu-

sively presumed that gas when withdrawn from the lands and waters of this State is withdrawn for the use and benefit of the person taking it from the land or waters in this State and having the original possessory right thereto as and when the same is produced."

One of such downstream purchasers of the same gas the title to which had previously been taken by a purchaser under a contract of statutory nature with the producer is appellee Michigan-Wisconsin Pipeline Company.

This company produces no gas in Texas or elsewhere. It gathers no gas in Texas. All the gas which it obtains in Texas is residue gas, which is the gas remaining from natural gas as produced at the wells after certain liquefiable hydrocarbons have been removed from it.

Such residue gas is delivered to Michigan-Wisconsin by Phillips Petroleum Company at the outlet of a gasoline plant owned by Phillips in Hansford County, Texas. Concurrently with such delivery, such gas flows immediately into the facilities of Michigan-Wisconsin for transportation by it to markets outside Texas.

The gas sold and delivered by Phillips to Michigan-Wisconsin, under written contracts, is residue from natural gas produced or purchased by Phillips. Some of this gas comes from acreage committed or dedicated to its supply; some comes from uncommitted or undedicated acreage.

The contract between Phillips and Michigan-Wisconsin is one in which Phillips is obligated to process or treat such gas so as to make delivery thereof as required by such contract.

It is clear to us that Michigan-Wisconsin is a "Severance Beneficiary" as defined by Sec. (4), Art. 22.02, supra.

Michigan-Wisconsin is certainly a person for whose use and benefit gas is withdrawn from the land or waters of this State.

It buys and transports such gas for consumption in other states. It could not be denied that this is a beneficial use of gas.

Michigan-Wisconsin has the prior right conferred upon it by written contract with Phillips to take title to gas produced from particular lands and Phillips, under such contract, is obligated to treat such gas so as to make delivery as required by the contract.

Being a Severance Beneficiary, as defined by the Act, Michigan-Wisconsin is, under these statutes, liable for the tax imposed by them. Such liability however, as conceded by appellants, renders the taxing statutes invalid in their entirety.

We will notice the arguments advanced by appellants in opposition to the construction we have placed on Sec. (4), Art. 22.02.

As shown by the quotation from appellants' brief, supra, they say that only a producer can confer the "prior right" to take title to dedicated gas because he, the producer, is the only person having a prior right to such gas to convey.

If the Legislature had intended for this section to have this meaning, it would have been very simple for the Legislature to have so provided. Such construction would require us to ignore the language of this section as well as other provisions of the Act.

If a producer dedicated all of his gas produced from certain lands under a contract coming within the terms of Sec. (4), then, if appellants' construction of this section be accepted, the person taking title to such gas under such contract would be a severance beneficiary and liable for the tax even though he had made a similar contract (such as Phillips made with Michigan-Wisconsin) with another person pertaining to the same gas. This construction is in the very teeth of the language of this section which provides that "If there be more than

one such contract covering the same gas, the tax hereby levied shall be the liability of the person who ultimately takes title to the gas in this State by virtue of such contracts."

We find appellants frankly stating:

"Though the contract in which a producer dedicates gas reserves to a purchaser represents the most common situation in the industry, it must be said, in fairness, that the industry apparently does not regard a producer as an indispensable party to a dedication contract. A contract in which a plant operator 'dedicates' to the performance of a contract with a 'downstream' purchaser gas which is dedicated to him by a producer is also apparently referred to as a 'dedication' contract. Though such contracts are probably more aptly described as 'dedicated contracts,' or 'contracts dedicating contracts,' it is not appellants' purpose to lead this Court to believe that 'dedication contract' is a term of art in the industry referring only to contracts between producers and purchasers."

Appellants explain the multiple contract provisions of section (4) by stating:

"It is commonplace in the natural gas industry for a producer to dedicate percentages of specified gas reserves to two or more purchasers, or 'severance beneficiaries.' In such cases, there are two or more 'such contracts' 'covering' the same gas. Also, in certain instances, two or more lessees will have undivided interests in the same gas leases, and will dedicate their respective portions of the gas in place by separate dedication contracts. Again, there are two or more 'such contracts' 'covering' the same gas. The contracts 'cover' the same gas in the same sense that two or more deeds creating undivided interests in property 'cover' the same property."

An undivided interest in property is a specified portion of the whole. Such interests may be equal but they are not the "same" in the sense that the owner of one interest can convey or contract with reference to the interest of another owner. The only manner in which the "same" interest may be conveyed is by succession, one person succeeding to the title of another. The instances posed by appellants are not of this character. They are collateral conveyances of separate, not the same, interests or gas. Neither grantee "takes title to the gas" by "virtue" of the other's contract.

To reach the construction for which appellants contend, we would have to discard as superfluous the word "ultimately" and disregard the employment of the plural "contracts" in the quoted sentence from section (4). Under their view there would be, except as to collateral contracts covering gas from the same lands or reservoir, but one contract, a contract between the producer and the severance beneficiary. Title would be taken directly, not ultimately, from the producer by virtue of a single contract and not by virtue of such "contracts."

Finally, such construction so sought by appellants would not take into account the frequent use of the term "first purchaser" in the Act.

If the purchaser from the producer is the only purchaser within the scope of the Act, then the use of the term "first purchaser" is inept, and the word "first" is a useless appendage.

We, as we should and must, give meaning and effect to the words "first purchaser." We believe that they evidence recognition by the Legislature that gas pipelines frequently do not purchase directly from producers. The 4th Annual Inst. on Oil and Gas Law and Taxation, p. 155, makes this statement:

"The seller ordinarily will be either the plant operator who has purchased

the gas to extract liquid hydrocarbons or the lessee, * * *"[4]

In Calvert v. Tennessee Gas Transmission Company, Tex.Civ., 341 S.W.2d 677, the Trial Court found and concluded, in part, as follows:

"A large part of the gas which plaintiff buys on delivery to its interstate lines in Texas as an incident to its occupation and business of transporting gas through its interstate lines to its outside markets consists of 'tailgate purchase' of 'residue' gas after plant processing with deliveries at the discharge side of gasoline plants for the purpose of immediate interstate transmission in a steady and continuous flow, * * *"

In its brief in that case Tennessee says:

" * * * it so happens, as proved and found in our case, that T. G. T. Co. buys approximately 50% of the gas which it purchases under 'dedication' contracts from plant processors at 'tailgates' or from 'gatherers.' "

The knowledge which we have of the judicial, legislative and political history of this Act compels a construction of it consistent with its plainly expressed and avowed purpose, to tax the last purchaser of gas in this State under dedication contracts. This is usually a pipeline. To construe the Act as appellants desire would saddle a substantial portion of this tax upon the processor or first purchaser and not upon the pipeline, contrary to its language and contrary to its historical purpose.

The judgment of the Trial Court is affirmed.

Affirmed.

GRAY, Justice (dissenting).

I am unable to agree with the conclusion reached by the majority in this cause.

In stating the reasons for my dissent I will refer to the Act as quoted in the footnote to the majority opinion giving only the numbers of the articles and the sections thereof.

Clearly the problem here is the same as stated in Michigan-Wisconsin Pipe Line Co. v. Calvert, 347 U.S. 157, 74 S.Ct. 396, 401, 98 L.Ed. 583:

" * * * whether here the State has delayed the incidence of the tax beyond the step where production and processing has ceased and transmission in interstate commerce has begun."

If the tax is on the production of gas then concededly it is valid. Utah Power and Light Co. v. Pfost cited in the majority opinion. To my mind it is such a tax.

Section (1) of Art. 22.01 levies the tax:

" * * * on the occupation or privilege of obtaining the production of Dedicated Gas within this State, and on the business or occupation of producing such gas, * * *"

Section (2) of that article provides the method for determining the market value of the gas, at the mouth of the well, for the purpose of the tax. Section (3) recites what the tax is as the terms are defined in the succeeding article. Section (4) fixes the liability for the taxes as that of the producer if produced for his own use or independent sale but if the gas is produced for or sold to a severance beneficiary then the tax shall be the liability of such beneficiary. Section (5) provides who shall pay the tax to the State Comptroller, and section (6) provides when the tax shall be due.

Art. 22.02 defines terms for the purpose of the Act. There producer, first purchaser, dedicated gas and severance beneficiary, with other terms, are defined. Dedicated gas and severance beneficiary are defined as follows:

[4] This publication is not available to us. We take this quotation from the brief of Tennessee Gas Transmission Company in a companion suit this day decided 341 S.W.2d 677. Appellants also refer to this authority in their briefs.

"(3) 'Dedicated Gas' shall include all gas withdrawn from the lands or waters of this State for the use and benefit of a severance beneficiary.

"(4) 'Severance Beneficiary' shall mean any person for whose use and benefit gas is withdrawn from the land or waters of this State."

Art. 22.03 to 22.07 are not of importance here and I pass to Art. 22.08 which I quote:

"Art. 22.08 Nonliability of producer

"The tax hereinabove imposed shall never be the liability or the obligation of the producer, except in those cases where the producer is the severance beneficiary as herein defined."

At most the article merely states a condition or proviso as to the person liable for the tax, and, combining its terms with the definition of severance beneficiary, it means that the tax shall be the liability of the person for whose use and benefit gas is withdrawn from the land or waters of this State. It is to be noticed, and said, that the tax is actually levied at the time the gas is produced and its value, for tax purposes, is determined at the mouth of the well. Then if the tax attaches at such time liability for its payment continues and can be discharged only by payment, the liability for which the statute fixes as that of the "person for whose use and benefit gas is withdrawn"—the severance beneficiary. Other persons such as those engaged in the physical task of bringing the gas to the surface are exempted from liability for the payment of the tax.

There is nothing in the Act that either requires or contemplates that the gas, when produced, shall be transported or sold into interstate commerce for which reason any such transportation or sale may be deemed as merely incidental. Wiloil Corporation v. Commonwealth of Pennsylvania, 294 U.S. 169, 55 S.Ct. 358, 79 L.Ed. 838.

In any event a first purchaser or a severance beneficiary takes the gas produced subject to the tax levied by Art. 22.01 and fixed by Art. 22.06. Otherwise a mere taking of possession of the gas produced, or the transfer of its possession, would avoid the tax levied on its production and which is made the liability of the severance beneficiary.

Other questions are raised in the briefs which are not decided by the majority. Suffice it to here say that in determining the constitutionality of the Act it is necessary to look to the meaning of the Act and to the meaning of the section of the Federal Constitution alleged to be violated. Duncan v. Gabler, 147 Tex. 229, 215 S.W.2d 155. And the spirit, purpose and scope of the constitutional provision are all to be consulted to determine the meaning of its terms. Aransas County v. Coleman-Fulton Pasture Company, 108 Tex. 216, 191 S.W. 553. While the commerce clause is given a broad and liberal construction and application and taxing cases are given little value in determining its meaning it does not deprive the states of their rights under their reserved powers. 15 C.J.S. Commerce § 6, p. 260, et seq. Here the question relates to the power of the State to levy a tax. As shown supra this tax is levied on gas produced. The Act does not deal with the transportation of such gas in intrastate or interstate commerce. However appellees say: they are pipelines engaged in the business of transporting gas in interstate commerce; also, are severance beneficiaries as defined by the Act, and that therefore their rights under the commerce clause are violated. The holding in Wiloil Corporation v. Commonwealth of Pennsylvania supra answers this contention.

It is my opinion that the tax here attaches when the gas is withdrawn from the land or waters of this State for the use and benefit of a severance beneficiary as that term is defined in the Act and that liability for the payment of the tax follows the gas. This irrespective of whether such gas

is or is not transported in interstate commerce. Accordingly I would reverse the judgment of the trial court and here render judgment upholding the Act.