**Weldon HOWELL et al., Plaintiffs,**

v.

**COLORADO INTERSTATE GAS CORP.,**
**Defendant.**

**Civ. A. No. 2773.**

United States District Court
N. D. Texas,
Amarillo Division.

Dec. 20, 1961.

William Q. Boyce, Amarillo, Tex., for plaintiffs.

Lewis M. Poe, Robert R. McCracken, Colorado Springs, Colo., A. J. Folley, Amarillo, Tex., for defendant.

FISHER, District Judge.

The Plaintiffs, who will hereinafter be referred to as the Bivins interests, are the lessors and royalty owners under an oil and gas lease. The named Plaintiff, Weldon Howell, is the agent for those persons executing the lease; however, all the lessors have since intervened. The Defendant, Colorado Interstate Gas Corporation, herein called Colorado, is the lessee under the subject lease.

In June, 1956, the State Comptroller audited Colorado's tax accounts for the years 1941 through 1956 and made a deficiency assessment of $936,237.48. The audit was made on the tax levied on producers of natural gas and formerly governed by Vernon's Ann.Civ.Tex.St. Article 7047b. However, it is now covered in the Taxation General Articles under Article 301, V.A.T.S. Colorado began negotiations with the State of Texas to settle the account, which negotations failed. Colorado and the State finally reached a settlement figure after suit had been filed

and the trial underway. In judgment styled State of Texas v. Colorado Interstate Gas Corp., Cause 106776, Travis County, Texas, May 1957, the parties agreed that the amount due was $460,-643.71. Colorado Interstate satisfied the judgment and then deducted the proportionate amount due from its royalty owners.

Colorado determined that the Bivins proportion of the total tax should be $39,-920.79 and deducted said amount from the Bivins royalty remittances for the months of July and August, 1957. The deduction of $39,920.79 is the subject matter of the suit.

The plaintiffs raise a jurisdiction question but have filed no motion to remand. Under the diversity of citizenship statute, 28 U.S.C. § 1332, a corporation is deemed to be a citizen of the state in which it is incorporated and of the state where it has its principal place of business. The Plaintiffs are citizens and residents of the State of Texas, and the Defendant in its removal petition alleges that its principal place of business is in Colorado and that it was incorporated in Delaware.

There is no doubt that the court could and should remand if it appears from the evidence that it does not have jurisdiction. As is stated in 35A C.J.S. Federal Civil Procedure § 464(a):

"A question of federal jurisdiction may be raised by any interested party even by the litigant invoking it in the first instance; and even though the question is not raised by the parties, it may and should be inquired into by the court of its own motion if there is any basis for such inquiry. The pleadings of the parties are not binding on the court so as to prevent such inquiry of its own motion if it has reason to believe that the case is not within its jurisdiction * * *."

If what has been offered by Plaintiffs is sufficient to create a basis for any inquiry into the jurisdiction of the District Court, then the inquiry should be made. Plaintiffs attempt, in their opening statement at the trial and in briefs, to show that Colorado Interstate's principal place of business is in Texas. However, they admit that the executive offices of Colorado Interstate are in the State of Colorado. This is important because there are conflicting holdings in the circuit courts in regard to the standards to use in such a determination. The prevailing rule in the Second Circuit says that the nerve center or the place where control radiates is the principal place of business. Scott Typewriter Co. Inc. v. Underwood Corp., D.C., 170 F.Supp. 862. The Third Circuit holds that the principal place of manufacturing, mining, and operations is the principal place of business, Kelly v. United States Steel Corp., 284 F.2d 850.

To summarize the offerings of Plaintiffs' counsel and argument in his brief, he states that Colorado has 80% of its total production in Texas and supplies gas to nearly all towns in the Panhandle area.

The case cited by Colorado, Wilson v. Republic Iron and Steel Co., 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144, indicates that the plaintiff assents to a removal if he does not take issue with the removal allegations. The assent to the removal in Wilson was found because of the plaintiff's total failure to take issue with the removal allegations of fraudulent joinder of parties. In the case at bar, Plaintiffs have not by motion contested the removal but have merely stated that there is a jurisdictional question and have offered unsworn testimony.

Under all facts presented to the court and statements made by counsel, the court concludes that it has jurisdiction of the matter.

On the merits, many of the Plaintiffs' arguments are to the effect that the tax was not legally computed and not due the State in the first place. In light of the statute, there is little substance to these contentions.

The pertinent parts of the statute are:

Art. 3.03(5). "The tax herein levied shall be borne ratably by all interested parties, including royalty interests; and producers and/or purchasers of gas are hereby authorized and required to withhold from any payment due interested parties, the proportionate tax due and remit the same to the Comptroller."

Art. 3.04(1). "For the purpose of this Act 'producer' shall mean any person owning, controlling, managing or leasing any gas well and/or any person who produces in any manner any gas by taking it from the earth or waters of this State, and shall include any person owning any royalty or other interest * * *."

Art. 3.05(1). "The tax herein imposed on the producing of gas shall be the primary liability of the producer as hereinabove defined, and every person purchasing gas from producer thereof * * * shall collect said tax imposed by this Chapter from the producer."

There is undisputed evidence in the record that the Defendant requested the State to separate their claim against Colorado from the amount due from the Bivins and the State refused to do so because Colorado is primarily liable to pay the tax and the State need look no further. Also, the Plaintiffs in this case were advised at nearly every step of the proceedings between Colorado and the State. They refused to enter any negotiations and stated that they would not be bound by the result of any agreement between the State and Colorado Interstate in regard to any back taxes due.

■■■ Under the statute, the tax is clearly assessed against the total production with the producer being primarily liable for the payment and he in turn is required to deduct the tax on royalty interests from royalty payments. This appears to be a situation where the plaintiffs could recover from Colorado only for negligence or fraud. The Plaintiffs have a remedy against the State for any over-

payment and they can recover for any mistake of law or fact. Art. 3.05(2).

There is no question that plaintiffs are liable for their proportionate part of the tax assessed unless they can show that they have contracted with Colorado to do otherwise. The first relevant agreement between these parties was dated May 1, 1939. In this Consolidated lease agreement, there was no provision for the payment of the production or occupation tax. After plaintiffs or their predecessors in interest refused to bear any responsibility for the payment of the tax under the May 1, 1939 lease, the matter was litigated by the present parties' predecessors in interest in Canadian River Gas Co. v. Bivins, 137 Tex. 347, 153 S.W.2d 432. The headnote in that case reads:

"The statute levying an occupation tax on the producers of natural gas makes the producer of natural gas, together with any other interest holder therein, ultimately liable for the tax. * * * A lessor who retained a gas royalty interest under a gas lease contract had a vital interest in the gas production and the sale thereof, and hence such royalty holder was an 'interest holder' within the meaning of statute making producer of gas and any other interest holder ultimately liable for his proportionate share of occupation tax levied on producers of gas."

Subsequent agreements between the parties, the 1951 Amendments to the 1939 lease and the New Consolidated Lease of October 22, 1954, both contained a provision relating to the payment of the production tax. The following passages from the 1954 New Consolidated Lease are pertinent at this point:

"Article X—Taxes

"5.1 It is agreed that during the life of this lease agreement the production or severance taxes levied and assessed by the State of Texas on gas produced from the New Consolidated Lease shall be borne ⅛th thereof by the lessor and the remaining portion of such taxes shall be

paid by the lessee. Lessee is authorized to make payment of such taxes as are so chargeable to lessor and deduct same from remittances made to lessor.

(3)

"The New Consolidated lease shall be effective as of January 1, 1954, and shall supersede in all respects the said Consolidated Lease agreement dated May 1, 1939, and all amendments thereto and the terms and provisions of such lease shall be from January 1, 1954, as hereinafter set forth.

"Release.

"Lessor does hereby remise, release, and forever discharge lessee of and from any and all actions or causes of action, suits, debts, damages, claims, demands, dues or controversy of any nature whatsoever other than those pertaining to or arising out of possible surface damage in law or in equity, that may exist or have arisen prior to January 1, 1954, directly or indirectly out of or appertaining to said Consolidated Lease, and all operations thereunder, and said Consolidated Lease is and shall be accepted as wholly valid and in good standing with no unfulfilled obligations or claims or demands whatsoever outstanding thereunder as of January 1, 1954.

"Article XII—Assignment.

"12.1 All of the rights and obligations herein contained shall inure to the benefit of, and be binding upon the lessor and lessee, their respective heirs, administrators, successors and assigns, provided that no conveyance or transfer of any interest of either party shall be binding upon the other party until such other party has been furnished with written notice and a true copy of such conveyance or transfer."

In essence, the Plaintiffs argue that these provisions in the lease make any assessment prior to the year 1954 void since the provision concerning taxes is prospective in nature and the fact that the second clause states that the 1954 lease supersedes all previous agreements. The tax provision is merely an acknowledgment of the findings in Canadian River Gas Corp. v. Bivins, supra, and sets forth the parties' proportionate liability for the occupation tax. The tax clause in both the 1951 amendment and 1954 New Consolidated lease, even if considered prospective and applying only to taxes due under the respective agreements, cannot under any construction be interpreted to be a contract between the parties that Colorado will bear the Bivins share of the tax.

Plaintiffs also contend that since the taxes assessed in 1956 relate back to a period from 1941 to May, 1956, they cannot be held liable for an undisclosed amount of the tax because three of their ancestors died and their estates were probated during this period, namely, Julian L. Bivins in 1946, Miles G. Bivins in 1949, and Mary E. Bivins in 1951. Plaintiffs' argument is that the claim for taxes does not survive after the closing of these estates. The present plaintiffs are successors in interest of the deceased and each of the lease agreements contained the above provision making all the terms binding on the heirs, administrators, successors and assigns. For this situation, Plaintiffs' remedy, if any, lies against the State of Texas for the assessment.

The question is, "Is there anything in the contract that relieves these plaintiffs from their liability for the occupation tax and places that liability on Colorado Interstate?" Certainly there is no specific acknowledgment by Colorado that it assumes this burden and under the terms of the contract, there is nothing that negates Plaintiffs' responsibility.

These parties cannot contract with each other that the tax on the royalty interest is not due the State; they can, however, contract that one or the other will assume the liability for the tax. No contract existing to this effect, judgment for the Defendant will be entered accordingly.